## The People on the Relation of William L. Whipple, Administrator, &c. vs. The Auditor General.

Under the Constitution of 1850, and prior to the present organization of the Supreme Court, the office of Judge of the Supreme Court was not a distinct office from that of Circuit Judge, but two sets of duties were attached to one office, under the latter designation.

The salary of the Circuit Judges, as fixed by Art. IX. of the Constitution, was not payable for the performance of one class of duties only, but was a remuneration for all the duties attached to the office; and it was not competent for the Legislature to grant an additional salary for the duties of the Circuit Judges as Judges of the Supreme Court; But *Held*, That it was not intended by Act 93 of 1851 (p. 106) to grant any such additional salary.

*Heard May 14th, 15th, and 17th. Decided May 28th.*

Petition for mandamus.

The petition sets forth that Judge Whipple was elected to the office of circuit judge before the 1st day of January, 1852, and on that day entered upon the discharge of his duties as such circuit judge, and continued to discharge the same until his decease in September, 1855; that, during all that time, he was also, in pursuance of the Act entitled "An Act to provide for the Organization and Powers of the Supreme Court," approved April 4th, 1851, a judge of the Supreme Court of said State, and entitled to the annual salary of $1,500, fixed by said Act for the judges of the Supreme Court; that no portion of said salary was ever paid to Judge Whipple, or to any one for him during his lifetime, or to his representatives since his decease; that petitioner is administrator on the estate of said deceased, and that, as such administrator, on the 5th day of May, 1857, he caused an account of such salary to be made out, together with a receipt therefor, and demand to be made on the Auditor General for payment of the same by his warrant; which was refused. And further, that, at the time of such demand and refusal, there was in the treasury sufficient funds for the payment of such account. And he prays for a writ of mandamus, directed to the said Auditor General,

5 MICH. — N.

commanding him forthwith to make payment of the said salary, together with interest, by his warrant.

The petition, as to the fact stated of the presentation of the account and refusal to pay, was verified by affidavit, and a copy of such petition, with notice of hearing upon it, served upon the Auditor General.

The Auditor General appeared, and filed his affidavit in response to the petition, presenting therewith verified copies of vouchers for the salary of Judge Whipple, as circuit judge, for the full term covered by the application; and setting forth that, after diligent inquiry in his office, he could not discover that the deceased, during his lifetime, ever made any claim to salary for services beyond those set forth in said vouchers. And respondent avers that Judge Whipple did not, nor did any of the circuit judges until the winter of 1857, make any claim to any salary for services as judge of the Supreme Court, as respondent believes. And he submits that Judge Whipple, having so received his salary as circuit judge, no further sum is due him from the State; and that, if it was the intention of Act of April 4th, 1851, to grant to the circuit judges any other or further salary, the same was, in that regard, unconstitutional and void.

The motion was now heard upon the petition and affidavit in answer.*

W. Gray, H. N. Walker, C. I. Walker, and H. H. Emmons, for petitioner.

J. M. Howard, Attorney General, for respondent.

CAMPBELL J.:

This is an application for a mandamus to compel the Auditor General to pay certain arrears of salary, claimed to

---

*This petition was brought to the notice of the late Supreme Court, at the July Term, 1857, and the Attorney General then appeared, prepared to oppose the same; but, on consultation among themselves, the members of that Court, all of whom, necessarily, had a personal interest in the question involved, came to the conclusion not to hear the argument. The matter, therefore, remained without action until brought up at this time, when it was argued at great length, and with corresponding earnestness and ability.

have been due to the deceased (who was one of the circuit judges elected in 1851, under the new Constitution) for services as judge of the Supreme Court. His salary as circuit judge was paid in full, and the claim is now made that he was also entitled to an additional annual salary of $1,500, under section 24, of "An Act to provide for the Organization and Powers of the Supreme Court," approved April 4, 1851.

The application is resisted, on the double ground, that the Constitution fixes the only salary lawfully receivable by a judge holding that position, and that the statute did not in law, make any additional provision. It is claimed that if the object of the statute was to create an additional salary to the one contained in the Constitution, then the statute itself would be void, as in violation of the Constitution.

It is suggested on the part of the respondent, that there has been a practical construction, by usage or acquiescence, against the construction set up by the relator, both of the Constitution and the statute. Without deciding how far, if at all, a written Constitution is to be controlled by usage, we do not conceive that the case before us requires any investigation into that field of inquiry. We see nothing in the nature of the questions presented to us, which removes the necessity of examining into the Constitution and the statutes, in the same manner as if these questions had arisen earlier. There has been no such building up of public or private rights, dependent upon one or another construction, as to require or permit the introduction of any rule which the subject would not allow as *res integra*.

The provisions of the Constitution which are thought to bear upon the question are the following:

Article VI., section two, declares that, "For the term of six years, and thereafter until the Legislature otherwise provide, the judges of the several Circuit Courts shall be judges of the Supreme Court, four of whom shall constitute a quorum. A concurrence of three shall be necessary to a final decision. After six years, the Legislature may provide

by law for the organization of a Supreme Court, with the jurisdiction and powers prescribed in this Constitution, to consist of one chief justice and three associate justices, to be chosen by the electors of the State. Such Supreme Court, when so organized, shall not be changed or discontinued by the Legislature for eight years thereafter. The judges thereof shall be so classified that but one of them shall go out of office at the same time. Their term of office shall be eight years."

Section six: "The State shall be divided into eight judicial circuits, in each of which the electors thereof shall elect one circuit judge, who shall hold his office for the term of six years, and until his successor is elected and qualified."

Section nine: "Each of the judges of the Circuit Court shall receive a salary payable quarterly. They shall be ineli-gible to any other than a judicial office, during the term for which they are elected, and for one year thereafter," &c.

Article IX., section one: "The judges of the Circuit Court shall each receive an annual salary of one thousand five hun-dred dollars."

The same section provides salaries for the other State officers, and then proceeds thus: "They shall receive no fees or perquisites whatever, for the performance of any duties connected with their offices. It shall not be competent for the Legislature to increase the salaries herein provided."

Before recurring to the law of 1851, under which this claim arises, it will not be out of place to notice what was the existing state of things at the time the old Constitution was superseded by the new one.

The Constitution of 1835 vested the judicial power in one Supreme Court, and such other courts as the Legislature might, from time to time, establish. The judges of the Supreme Court were to receive an adequate salary, the amount of which it was left to the Legislature to fix, but not to dimin-ish during their term of office. It was provided that "they shall receive no fees nor perquisites of office, *nor hold any*

*other office of profit or trust* under the authority of this State, or of the United States." No provision was made in the Constitution for the presiding judges of Circuit Courts, but associate judges of those courts were to be elected, whose office was subsequently abolished. — See *Article IX., Constitution of* 1835. At the session of the first State Legislature, a judiciary system was adopted, whereby the Circuit Courts were created, and it was declared that, "one of the judges of the Supreme Court shall perform the duties of circuit judge in each of said circuits." — *L. of* 1835-6, *p*. 30. The salary was given to them as judges of the Supreme Court. The tenure of the judges was, in 1850, changed from an executive to an elective choice, but in all other respects the law remained unchanged, until the adoption of the present Constitution. The Supreme Court, which originally was created with three judges, received subsequently two additional members, and in 1850 consisted of five.

We find, then, in that year, that the same persons who collectively formed a Supreme Court, with appellate jurisdiction only, except in a few cases, presided, each in his own circuit, over the several Circuit Courts established by law in each organized county. At that time the Court of Chancery had been abolished, and all equity causes orginated in the Circuit Courts. In the exercise of his original powers in the Circuit Courts, each justice of the Supreme Court was called a "circuit judge." The language of the statute may be quoted, as not without significance in the inquiry before us. It is as follows: "*Each of the justices of the Supreme Court* shall, twice in each year, except in the cases hereinafter otherwise provided, hold a Circuit Court in each of the counties in the circuit designated in his appointment, *and in the performance of such duties shall be denominated circuit judge.*" — *R. S. of* 1846, *p*. 353. The Constitution prohibited the Supreme Court judge from holding any other office whatever. He held the Circuit Court by virtue of his constitutional office, to which that additional duty was attached by the Legislature. No

new *office* was created. He was simply, for obvious reasons of convenience, called by the name appropriate to the functions he was performing for the time being; as the Governor, or one of the judges, was, in the performance of certain other functions appertaining to his office, styled a member of the board of regents of the University. The additional duties are all laid upon him as a justice of the Supreme Court; and the abolition of any of them would not have altered his legal position in that regard: he would still have been, as before, a justice of the Supreme Court.

Such being the old law, in what respect was it changed by the new Constitution? That instrument provided, that it might be lawful, after a certain period, to organize a Supreme Court, with the powers specified; which should consist of a chief justice and three associates, who should be judges of that court only. It is under this provision that we now act. But this was prohibited until the expiration of six years, during which period another provision was made. No Legislature had authority to create a separate court during this interval. The Constitution itself made full provision how the duties should be performed.

The first thing which strikes any one who compares the judiciary system which was to exist during the first six years with that which had existed when the Constitution took effect, and was retained under the schedule until the election of new judges, is the identity in principle existing between the new and the old courts. By section ten of the schedule, all cases pending in the existing Supreme Court, were to become vested in the Supreme Court established by the Constitution; and all suits and proceedings in the old Circuit Courts were to be in like manner vested in the new ones. The Upper Peninsula was indeed created into a separate district, but the District Courts there succeeded the Circuits, and had the same powers reserved to them. The constitutional grant of powers to the Supreme Court, did not vary materially, if at all, from the old jurisdiction. The judges who were to pre-

side in the Circuit Courts, as newly organized, were to sit together in the Supreme Court; and no other persons were to sit with them. The powers were the same, and the officers were the same, increased in number, but each one performing the same twofold duties of presiding magistrate of a court of original jurisdiction and associate justice of the appellate tribunal. It can not be doubted that, up to January, 1852, there was but one office, with various duties attached to it, which the person filling that office performed *virtute officii* only, and not by any double appointment. He was constitutionally ineligible to more than one office. And whether acting in the capacity of regent, circuit judge, or justice of the Supreme Court, the person performing any of these duties was only a justice of the Supreme Court, in legal contemplation, and the other titles and duties were the appendages of that one office. And had either of the others been created, as the primary office, the same union of duties remaining, the result would have been similar.

Under the present Constitution, then, there is nothing in the arrangement of duties which would render it impossible, or improper, to suppose a unity of official character may have been intended, provided the language used should fairly and naturally lead to that conclusion. And the question arises, Whether two distinct offices have been created, or whether two sets of duties have been attached to one?

The judicial power is vested in one Supreme Court, in Circuit and Probate Courts, and in courts held by justices of the peace. To supply these courts, express provision is made for the election of circuit and probate judges and justices. The Legislature is expressly authorized to provide for the election of judicial officers to perform the duties of a circuit judge at chambers. No provision whatever is made for the election or appointment of Supreme Court judges, until the independent Supreme Court should be established. No provision is made for any salary under that name, although every other State office is expressly provided for. Provision is made

for the salaries of circuit judges where none but State officers are
mentioned, although their circuit duties are local and their elec-
tion is local, and they vacate their offices by removing from their
circuits.   And while the term Supreme Court judge is several
times used, it is never used where it may not be referred to
the judges ·of the future separate court; and it never occurs
where, if intended to apply to the others, it would not be
superfluous; inasmuch as in every instance it is grouped with
circuit judges as grantees of identical powers.   If the Consti-
tution intended to keep up these offices as distinct, it is very
remarkable that the highest court should have no provision
made concerning its judges, their terms of office and remu-
neration.     If no provision were made for holding the court,
and the method of transacting its business, it might well be
said the whole subject was left to legislation.

But here it is expressly provided that the circuit judges
and no one else shall hold it.   "The judges of the several
Circuit Courts shall be judges of the Supreme Court" is an
exclusive provision not open to qualification.   They hold no
separate commission.   As judges of the Circuit Court, and in
no other way, they hold the Supreme Court.   Together, they
constitute the court: separately, they are circuit judges.
There is, under the Constitution, as applied to the Supreme
Court first organized, no such thing as a Supreme Court
judge, properly so called, out of court.   Whoever, by the
vote of the electors in any judicial circuit, was chosen to be
judge of the Circuit Court, became without further ceremony
invested with all the authority conferred by the Constitution
in both courts.   Every judicial officer is required by Article
XVIII., before entering upon the duties of his office, to take
an oath to discharge its duties faithfully.   An oath to perform
the duties of the office of a judge of the Circuit Court would
certainly cover any duty devolving upon the person elected.

If the clause in question simply authorized a circuit judge
to *perform the duties of the office* of a judge of the Supreme
Court, there would perhaps be room for verbal criticism, the

correctness of which it would require a comparison of the whole instrument to determine. As we must in any case regard the whole instrument, the difference would not be very serious. But when the law says the judge of one court shall *be* judge of another, it uses the strongest words the language affords to express absolute identity. When one ceases to exist, there is no survivorship.

The language being so appropriate to convey this idea, and the judicial system being substantially as it was when a judge of the Supreme Court, who by law could hold no other office whatever, was nevertheless circuit judge, the most reasonable conclusion at which we can arrive is, that there is but one office, properly so called, created by the Constitution.

Is, then, the salary payable for the performance of one class of duties, or is it a remuneration for all? As before remarked, it is payable by the State among the salaries of State officers. Three of those officers, in addition to their separate duties, constitute two boards, — a board of State Auditors and a board of State Canvassers, each having many and onerous duties. Another is, *ex officio*, a member and secretary of the Board of Education. These duties are affixed to the offices, by the Constitution itself. The provision against increase of salaries, and fees and perquisites, applies to all of them. It is very true that in their case, as in the case of circuit judges, it is said the officers shall constitute the boards; but if the officer must perform the duties, and if no one else can, it can require no reasoning to prove that what is thus incumbent on him is one of "*the duties of his office.*" The salary is not given for one thing or for another. It is given to the Governor, to the Auditor, to the Judge; and it must be understood, as it is plainly expressed, to be the salary for such duties as are imposed upon them officially by the Constitution. The same instrument creating the office, the duties, and the emoluments, they must all be held as belonging together, and constituting a complete guide to the whole matter.

It is urged that the Constitution was framed intentionally so as to leave the remuneration for Supreme Court duties in the hands of the Legislature; because, when separated by a new organization, it would be peculiarly difficult to calculate beforehand how it should be apportioned. And it is also urged that it is hardly supposable that the same salary would be given to judges after their duties are reduced, that would be given them before; and that the salary is too small for both services. However much we may lament, and we do lament its inadequacy, we can not regard it as a legal argument upon the question of construction; and if it were a legitimate argument, we should be compelled to remember that, when five judges performed the same duties which by this Constitution are imposed on eight, their compensation was no greater. The division of the circuits shows an attempt, however successful or unsuccessful it may have been, to equalize the circuit labors of the several incumbents; while in the Supreme Court they would all have the same burdens. However difficult it might have been to provide for contingencies in the future, and however unfortunate it was that no opportunity was allowed for future equitable adjustment, it can not be denied that the Convention were as well qualified to decide what pay should be given for Supreme as for Circuit duties, if to be paid separately. It was not certain that any separate Supreme Court would be organized at any particular time, or at all. It was less likely to be organized if the double system worked satisfactorily. It is not strange that no provision was made for salaries which might never be called into use. It would have been strange if the then present exigency had not been entirely provided for, when such entire provision was as easy as a partial one. It is also to be borne in mind that any judge of the Circuit or Supreme Court would necessarily have his time so appproriated that it would deprive him in fact, whether legally competent for other pursuits or not, of any ability to pursue them successfully; and a relief from either branch of labor would not warrant a proportionate, or indeed any, reduction of salary.

The interpretation which we derive from the language of the Constitution would be quite as well warranted as any other, by any antecedent probabilities derived from the deliberate action of the Convention on the other subjects embraced in the instrument and appearing there. But any question of mere policy can throw but little light on the proper construction of this Constitution. It must be construed by its language and the changes made by it in our then existing system. All other guides must be uncertain.

If, then, the Constitution fixed the salaries of the judges, it can make no difference what the Legislature did afterwards. But the law of 1851, organizing the judiciary system, is in no way inconsistent with the Constitution. The whole claim of the relator rests on section 24 (*L.* 1851, *p.* 106), which provides that " each of the judges of the Supreme Court shall receive an annual salary of one thousand five hundred dollars, payable quarter-yearly," &c. But the sum is the same fixed by the Constitution, and it is not made payable for Supreme Court duties. It is payable to the judges just as the constitutional salary is. And who are the judges? The law is even more specific than the Constitution. Section one provides that "the Supreme Court shall consist of the judges of the several Circuit Courts"; and that " they shall hold their offices as provided in the Constitution of this State." It does not in any manner countenance the idea of a separate office. The law conveys no different idea from that derived from the language of the superior instrument, and clearly designs the salary to go to the officers whom the first section recites as comprising the court. No ambiguity could very well arise on any conflicting claims. It would be a very hard rule which would make a law unconstitutional for any such verbal difference as this would be if section one were left out entirely, as it might be without harm, inasmuch as the court is organized by the Constitution. But taking the whole law as it stands, it is a mere re-enactment of the Constitution.

The importance of the questions presented, upon many reasons, both of public and private interest, has induced the court to give them all the consideration possible, with a view to a just conclusion. We listened with pleasure and attention to the able arguments of the learned counsel who represented the parties interested in the fund in controversy, and have weighed them carefully, to see if we could find sound reasons for yielding to their force. We feel sensibly the privations endured by the former bench, in performing arduous duties, and incurring heavy expenses, upon very inadequate salaries. But upon a review of the whole case, and upon a comparison of the various parts of the Constitution and the statute, we can not say that we entertain any doubt how they should be construed. We think the salary mentioned in the Constitution was provided to pay for all the services required by that instrument to be performed by the judges, and that the statute is in accordance with that intent.

We therefore deny the application for a mandamus, without costs.

MANNING and CHRISTIANCY JJ. concurred. MARTIN Ch. J. did not sit in this case, being interested in the question.