[No. 4,166.]

## JOHN L. LOVE, ATTORNEY-GENERAL, *v.* F. W. BAEHR, TREASURER OF STATE.

POWER OF LEGISLATURE AS TO DUTIES OF STATE OFFICERS.—Although the Constitution is wholly silent with respect to the duties to be performed by the Attorney-General, Secretary of State, Controller, and Treasurer, and contains no express limitation on the power of the Legislature as to the nature of the duties it may impose on these officers, yet a limitation on this power is necessarily implied, from the nature of these offices.

IDEM.—Such limitation will be found in the general class of duties which the incumbents of similar offices had performed in other States, before our Constitution was adopted.

IDEM.—In assigning to these officers their duties, the Legislature possesses a wide discretion, and the Courts will not interfere unless the duties assigned are in their nature wholly foreign to the office.

ATTORNEY-GENERAL'S SALARY, AND POWER OF LEGISLATURE OVER HIS DUTIES.—The Legislature has no power to compel the Attorney-General to perform the duties of a member of the Board of Examiners, to examine and approve or reject claims against the State; but if such duties are imposed on him by law, and he voluntarily performs them, the Legislature may compensate him for this unofficial service, by paying him a salary in addition to that which he receives as Attorney-General, even if the law allowing him such salary is passed during his term of office.

APPLICATION by John L. Love, the Attorney-General, to the Supreme Court for a writ of mandate to require the defendant, the State Treasurer, to pay a warrant, drawn by the Controller in his favor, for the sum of one hundred and twenty-five dollars, for his salary as a member of the Board

of Examiners, for the month of January, 1874. The case was submitted on an agreed statement, showing that the petitioner was elected Attorney-General in September, 1871, and still held the office; that he had performed the duties of a member of the State Board of Examiners during the month of January, 1874, and that the respondent had refused to pay the warrant drawn by the Controller for the amount allowed by law for such services.

The other facts are stated in the opinion.

*Creed Haymond,* for the Petitioner, argued that the clause in our State Constitution (Sec. 21, Art. V), was the prototype of Sec. 1, Art. II of the Federal Constitution, which provided that "the President shall at stated times, receive for his services, a compensation which shall neither be increased nor diminished during the period for which he shall have been elected, and he shall not within that period, receive any other emolument from the United States, or any of them," and that as similar clauses were found in nearly all the State Constitutions, and all except Nevada had left out the last clause, it was manifestly the intention in the State Constitutions, to apply the prohibition to the salary of the office, and not to prevent the Legislature from allowing compensation for services other than those falling within the line of official duty appertaining to the office. That the offices of Attorney-General and member of the Board of Examiners, were distinct, and the duties of the latter did not pertain to the law department, and cited *People* v. *Edwards,* 9 Cal. 291, and *Attorney-General* v. *Squires,* 14 Cal. 16, and *Lathrop* v. *Brittain,* 30 Cal. 683.

He also argued that where one who held an office, was appointed to another office with a separate salary, he could receive both salaries, and cited *United States* v. *Austin,* 2 Clifford C. C. R. 334, and *Crossman* v. *Nightingill,* 1 Nev. 326, and that the law did not invest the Attorney-General with the functions of a member of the Board of Examiners, but that a new office was created and the person filling the office of Attorney-General was the one designated to fill it,

and that it was not as Attorney-General he acted as a member of the Board of Examiners.

*T. H. Laine* and *W. W. Pendegast,* for the Respondent, argued that Sec. 21 of Art. V of the State Constitution settled the whole matter, as it prohibited an increase of the Attorney-General's salary during the term for which he was elected, and that the attorney was invested with the functions of a member of the Board of Examiners, as a consequence of his holding the office of Attorney-General, and not as a person, and that the pay allowed as a member of the Board of Examiners, was really an increase of the salary of the Attorney-General, for when the incumbent ceased to be Attorney-General, he would cease to be a member of the Board of Examiners.

By the Court, CROCKETT, J.:

This is an application for a mandamus to compel the State Treasurer to pay a warrant drawn by the Controller of State, in favor of the Attorney-General, for a portion of the compensation due to him as a member of the State Board of Examiners. Payment is resisted on the ground — 1st. That the services to be performed by the Attorney-General as a member of the Board of Examiners are such as by law pertain to and are a part of the duties of the office of Attorney-General. 2d. That when the present incumbent was elected to and entered upon the duties of the office of Attorney-General, no provision was made by law for the payment of a separate compensation to him for his services as a member of the Board of Examiners. 3d. That section 684 of the Political Code, passed since incumbent went into office, which provides that the Attorney-General as a member of the Board of Examiners shall receive an annual salary of $1,500, can have no application to the present incumbent under section 21, Article V, of the Constitution, which provides that certain executive officers, including the Attorney-General, " shall each at stated times during their continuance in office receive for their services a compensa-

tion, which shall not be increased or diminished during the term for which they shall have been elected; but neither of these officers shall receive for his own use any fees for the performance of his official duties."

The argument for the respondent is, that the duties imposed by law upon the Attorney-General as a member of the Board of Examiners constitute a part of his official duties as Attorney-General, and that under the clause of the Constitution just quoted, it is not competent for the Legislature to increase his compensation during the term for which he was elected. The Constitution provides for the election of a Secretary of State, Controller, Treasurer, Attorney-General and Surveyor-General, but is wholly silent in respect to the duties to be performed by either, leaving these to be prescribed by the Legislature. The first question to be determined is whether the Legislature has an unlimited discretion in respect to the nature of the duties which it may require to be performed by these officers? May it compel the Treasurer, *ex officio*, to act as Warden of the State prison, or the Controller as State Librarian, or the Surveyor-General as a State Commissioner, having charge of the public buildings and grounds, or the Attorney-General as the Superintendent of the State lunatic asylum, or the Secretary of State as the manager of a State hospital? If there is no limitation upon the power of the Legislature in respect to the nature of the duties which it may impose upon these officers, it is clear that it may exact from either of them the performance of any or all of the services above indicated. It may require the State Treasurer to be at the same time, *ex officio*, the Warden of the State prison, Superintendent of the State lunatic asylum, Manager of the State hospital and Commissioner of the public buildings. The power of the Legislature being conceded to be unlimited in this respect, there would remain only a question of discretion as to the mode of its exercise. It is admitted that the Constitution contains no express limitation on the power of the Legislature in this particular. But we think a limitation is necessarily implied from the definition of the office. From the earliest period of our history as a nation, almost every

State in the Union had a Secretary of State, Controller, Treasurer, and Attorney-General; and the general nature of the duties pertaining to each were perfectly well known to the framers of our Constitution. It is clear beyond controversy, that in establishing similar offices here, the framers of that instrument had reference to the same general class of duties, which it was well known pertained to such offices elsewhere. The Constitution provides for the election of a Superintendent of Public Instruction, whose duties are not defined; and might have provided for the election of a State Geologist. Can it be claimed with any show of reason, that the Legislature could compel either of them to become *ex officio* Warden of the State Prison or Superintendent of the State Lunatic Asylum? It is not usual in State Constitutions to define the particular duties of subordinate officers; that being the peculiar province of the Legislature, which, it is to be presumed, will prescribe only such duties as in their nature have heretofore appertained to similar offices elsewhere. In the performance of this duty, the Legislature may rightfully exercise a wide discretion. It may assign to each of these officers any duties, which, by the most liberal interpretation, can be held to come within the general scope of that class of duties which have usually appertained to such offices, as they were understood by the framers of the Constitution. In cases of doubt, it would be the duty of the Courts, in deference to the legislative authority, to solve the doubt in favor of the power as exercised; and they ought to interfere only in a clear case, when the Legislature has manifestly transcended its authority by imposing upon one of these officers duties which, in their nature, are wholly foreign to his office. We proceed to inquire whether this is such a case.

The first State Board of Examiners, consisting of the Governor, Secretary of State and Attorney-General, was established by the act of April 20th, 1856, (Statutes 1856, 100.) No compensation was allowed the Governor for this duty; but the other members of the Board were allowed $600 each, per annum, for their services. In 1858 another act was passed, the first section of which is in these words:

"The persons who fill and discharge the duties of the office of Governor of this State, Secretary of State and Attorney-General are hereby appointed and constitute a Board of Examiners, with the power and duties hereinafter specified." After proceeding to define the duties and powers of the Board, it is provided in section 18, "that for the services herein specified, the person acting as Governor, or filling that office, shall receive a salary of one thousand dollars per annum," and the same provision is made for "the person filling the office" of Secretary of State or Attorney-General (Statutes 1858, p. 212.)

By the second section of the Act of May 6th, 1861, (Statutes 1861, p. 301,) it is provided that none of the certain enumerated officers, among whom were the Governor, Secretary of State and Attorney-General, "shall receive any other compensation whatever, for any duties that are now, or may hereafter be, required of them by law, than such as is fixed by this act. No new office, which is now, or may hereafter be, created, the duties of which, in whole or in part, shall be required to be performed by any such officer, shall entitle them to receive any extra compensation therefor." It may be conceded that this had the effect to repeal so much of the Act of 1858 as provided for compensation to the members of the Board of Examiners; and thus the law stood when the present Attorney-General was elected and qualified. But by the Political Code, which was subsequently passed, the State Board of Examiners was continued in existence, and its duties particularly defined, as were also those of the Attorney-General. His duties are defined to be to attend to the Supreme Court, and represent the State in all litigation pending there; to account for and pay over to the proper officers all money of the State which may come into his hands; to keep a docket in which the proper entries shall be made; to exercise a supervision over District Attorneys; to give his opinion, when required, to the Legislature, Governor and other specified State officers; to aid District Attorneys in the performance of their duties, when required to do so by the Governor; to bid in property sold under executions in favor of the State, under certain

circumstances, and to perform other similar duties. By subdivision 11 of section 470, he is also required "to discharge the duties of a member of the Board of Examiners, of the Board of Military Auditors, and other duties prescribed by law."

The duties of the Board of Examiners are to examine and approve, or reject, all claims against the State except claims upon the contingent fund of either branch of the Legislature, and official salaries; to examine the books of the Controller and Treasurer; to count the money in the State treasury at least once a month; to invest the proceeds of State school lands in civil funded bonds of this State, or in United States bonds, and to deliver the bonds to the Treasurer. The annual salary of each member of the Board is fixed at $1,000, except that of the Attorney-General, which is fixed at $1,500. (Political Code, sections 654 to 685.) Some of these services have not the slightest relation, even upon the most liberal construction, to the duties of an Attorney-General, as such duties were generally understood at the adoption of the State Constitution, and as they were doubtless understood by the framers of that instrument. The business of counting money in the treasury, examining books of account, requiring the skill of an expert accountant rather than the professional learning of a lawyer, and the investment of public money in bonds, is wholly foreign to the duties of an attorney, and is no more cognate to them than the management of a State prison or lunatic asylum. The Legislature has no more power to compel the Attorney-General to perform such service as a part of the duties of his office, than it has to compel the Superintendent of Public Instruction to take charge of the State prison, or to perform the duties of State Gauger. The Attorney-General is, therefore, under no obligation to perform such services, and he may decline to perform them, without any breach of his official duty as Attorney-General. If, however, he voluntarily performs them, he does not thereby enlarge the scope of his official duties as a constitutional officer. By no compact between him and the Legislature can his official duties as Attorney-General be extended beyond

the limits contemplated by the Constitution.  On several occasions the Legislature appears to have so interpreted the Constitution, by providing compensation for these services, which were deemed not to be included within those which .properly pertained to the office of Attorney-General.  If, however, he has performed a service which, under the Constitution, is wholly foreign to his office, and which is not and cannot become a part of his official duty as Attorney-General, and if the Legislature has seen fit to compensate him for this unofficial service, there is no-constitutional impediment to hinder them from doing so.

It is true, as suggested by counsel, that the Legislature might abuse its trust, and perhaps partially evade the constitutional prohibition, by contracting with these officers for the performance of trivial, non-official services, at an exorbitant compensation.    But all legislative power is subject to abuse; and under our form of government, the only remedy is to be found at the ballot-box.

Let the writ issue, as prayed for.

Mr. Justice RHODES, and Mr. Justice McKINSTRY, dissented.