## WARNER v. AUDITOR GENERAL.

STATE OFFICERS—SALARY—INCREASE—CONSTITUTIONALITY—BOARD OF AUDITORS—DUTIES.

Article 9, § 1, of the Constitution, provides that the State treasurer, secretary of State, and commissioner of the land office shall receive stipulated annual salaries, but no fees or perquisites whatever for the performance of any duties connected with their offices, and that the legislature shall not increase their salaries. Article 8, § 1, provides that such officers shall perform such duties as may be prescribed by law. Article 8, § 4, provides that the officers named shall constitute a board of State auditors, to adjust all claims against the State not otherwise provided for by general law. Act No. 171, Pub. Acts 1901, provides that the officers constituting the board of

State auditors shall be paid annually $1,800 each, as compensation for services performed by them as members of such board not contemplated by the Constitution, and as a reimbursement for their traveling expenses as such members. *Held*, that the compensation provided for by the Constitution covers all duties lawfully imposed on such officers as members of such board, whether by the Constitution or by statute; and, the legislature not having undertaken to impose any duties not germane to the purpose for which the board was created, the act mentioned is unconstitutional and void.

*Mandamus* by Fred M. Warner, Daniel McCoy, and Edwin A. Wildey to compel Perry F. Powers, auditor general, to issue warrants for the payment of salaries to relators as members of the board of State auditors. Submitted December 3, 1901. Writ denied March 18, 1902.

*Horace M. Oren*, Attorney General (*Roger Irving Wykes*, of counsel), for relators.

*E. Eugene Haskins* and *Eugene F. Sawyer*, for respondent.

MOORE, J. This is an application for a *mandamus* to compel the respondent to issue warrants in favor of relators as members of the board of State auditors. The question involved is the constitutionality of Act No. 171 of the Public Acts of 1901. In considering the very important question involved, we have been greatly aided by briefs of exceptional ability by counsel on both sides of the case.

The act under consideration reads as follows:

"The several State officers constituting the board of State auditors shall be paid for the year nineteen hundred one, and annually thereafter, the sum of eighteen hundred dollars each as compensation for the services performed by them as members of said board of State auditors not contemplated by the Constitution of this State, and as a reimbursement for their necessary traveling expenses and hotel bills when traveling on State business, and in attending meetings of the board of State auditors, and meetings of other boards of which said officers are members, said amount to be in lieu of the reimbursement provided for in

sections one hundred sixty-nine and one hundred seventy of the compiled laws of eighteen hundred ninety-seven, for dis[reim]bursement of expenses, and to be paid from the general fund on the warrant of the auditor general in the same manner in which salaries of the State officers are now paid."

Its constitutionality is assailed upon three grounds, only one of which we deem it necessary to discuss, to wit, Is the act in conflict with section 1, art. 9, of the Constitution, which reads as follows:

" * * * The State treasurer shall receive an annual salary of one thousand dollars; * * * the secretary of State shall receive an annual salary of eight hundred dollars; the commissioner of the land office shall receive an annual salary of eight hundred dollars. * * * They shall receive no fees or perquisites whatever for the performance of any duties connected with their offices. It shall not be competent for the legislature to increase the salaries herein provided."

Before this question can be answered, it is necessary to call attention to two other sections of the Constitution, which read as follows:

Section 1, art. 8. "There shall be elected at each general biennial election a secretary of State, * * * a State treasurer, a commissioner of the land office, * * * for the term of two years. They shall keep their offices at the seat of government, and shall perform such duties as may be prescribed by law."

Section 4, art. 8. "The secretary of State, State treasurer, and commissioner of the State land office shall constitute a board of State auditors, to examine and adjust all claims against the State not otherwise provided for by general law."

This section also provides that these officials shall constitute a board of State canvassers, to determine the result of certain elections.

The attorney general contends—and there is a good deal of force in his argument—that:

"The duties performed by the State officers constituting the board of State auditors may be divided into three classes:

"1. Those imposed upon and pertaining to their duties as State officers.

"2. Those constitutionally imposed upon them as members of the board of State auditors.

"3. Those legislatively imposed upon them as members of the board of State auditors, being of a class not contemplated by the Constitution, but foreign to that instrument, and of a different and alien nature to those thereby imposed.

"The first two classes of duties are those imposed by the Constitution, and are within the prohibition against receiving fees or perquisites, and the inhibition upon the legislature to increase salaries."

In an appendix to his brief he calls attention to a long list of duties imposed by statute upon the board of State auditors, and claims they come under the third class, and insists that, as to the duties imposed upon the board under the third class, the prohibition does not exist; that —

"As the act in question limits the compensation which it awards to those services performed by the board of State auditors which are not contemplated by the Constitution, this is a legislative determination that duties not contemplated by the Constitution have been imposed upon this board, and that it is within the authority of the legislature to award compensation therefor.

"The early case of *People* v. *Auditor General*, 5 Mich. 193, supports the contention that the salary given by the Constitution was intended as payment only for duties constitutionally imposed, and those germane thereto; and in that case, which must be regarded as a contemporaneous judicial construction of the Constitution here in question, after speaking of the State officers constituting the board of State auditors and the duties imposed upon it by the Constitution, it was said:

"'The salary is not given for one thing or for another. It is given to the governor, to the auditor, to the judge; and it must be understood, as it is plainly expressed, to be the salary for such duties as are imposed upon them officially by the Constitution. The same instrument creating the office, the duties, and the emoluments, they must all be held as belonging together, and constituting a complete guide to the whole matter.'

"*Love* v. *Baehr*, 47 Cal. 364; *Melone* v. *State*, 51 Cal. 549; *Green* v. *State*, 51 Cal. 577; *State* v. *Weston*, 4 Neb. 234."

We will have occasion to refer to the case of *People* v. *Auditor General, supra,* further on, but it may be well to turn our attention for a moment to the other cases.

*State* v. *Weston, supra,* was a case which holds that the secretary of State is not ineligible to the appointive office of adjutant general, and there is nothing incompatible in the duties of the two offices, and there is nothing in the constitution of Nebraska standing in the way of his holding both offices, and therefore he is entitled to both salaries.  In the same case it was said that, as to all acts or duties required of. the relator as secretary of State, he is confined to his salary of $2,000 per annum as compensation.

*Melone* v. *State* and *Green* v. *State* grow out of the same state of facts as the case of *Love* v. *Baehr,* and are controlled by it.  In the last-named case Mr. Love, who was attorney general, sought to obtain, and was allowed, a salary as a member of the board of examiners.  The case shows that the constitution of California is wholly silent as to the duties to be performed by the attorney general.  Bearing this in mind, it may, perhaps, be useful to quote from the case :

"The constitution provides for the election of a secretary of State, controller, treasurer, attorney general, and surveyor general, but is wholly silent in respect to the duties to be performed by either, leaving these to be prescribed by the legislature.  The first question to be determined is whether the legislature has an unlimited discretion in respect to the nature of the duties which it may require to be performed by these officers."

The court answered this question in the negative.  As to what duties the legislature may impose on a State officer the court say :

"In the performance of this duty the legislature may rightfully exercise a wide discretion.  It may assign to each of these officers any duties which, by the most liberal interpretation, can be held to come within the general scope of that class of duties which have usually appertained to such offices, as they were understood by the

framers of the constitution.   In cases of doubt it would
be the duty of the courts, in deference to the legislative
authority, to solve the doubt in favor of the power as ex-
ercised; and they ought to interfere only in a clear case,
when the legislature has manifestly transcended its author-
ity by imposing upon one of these officers duties which, in
their nature, are wholly foreign to his office.   We proceed
to inquire whether this is such a case."

After enumerating the things which the legislature
ordered the attorney general to do, the court proceeds as
follows:

"Some of these services have not the slightest relation,
even upon the most liberal construction, to the duties of
an attorney general, as such duties were generally under-
stood at the adoption of the State constitution, and as they
were doubtless understood by the framers of that instru-
ment.   The business of counting money in the treasury,
examining books of account, requiring the skill of an ex-
pert accountant rather than the professional learning of a
lawyer, and the investment of public money in bonds, is
wholly foreign to the duties of an attorney, and is no more
cognate to them than the management of a State prison or
lunatic asylum.   The legislature has no more power to
compel the attorney general to peform such service, as a
part of the duties of his office, than it has to compel the
superintendent of public instruction to take charge of the
State prison, or to perform the duties of State gauger.
The attorney general is, therefore, under no obligation to
perform such services, and he may decline to perform
them, without any breach of his official duty as attorney
general."

The court held that, though the legislature could not
compel the attorney general to perform these new duties,
still, if he voluntarily performed them, it might compen-
sate him for this unofficial service by allowing him com-
pensation in addition to his salary as attorney general.

As germane to the same subject, and to the proposition
that, where a public officer is required to perform duties
entirely outside of the line of his official duties, he is en-
titled to compensation therefor, and, in cases of those
municipalities which are subject to suit, a claim arises

which can be enforced in the courts, counsel cite *City of Detroit* v. *Redfield*, 19 Mich. 376; *Ten Eyck* v. *Railroad Co.*, 74 Mich. 226 (41 N. W. 905, 3 L. R. A. 378, 16 Am. St. Rep. 633); *Roulo* v. *Board of Auditors of Wayne Co.*, 74 Mich. 129, 134 (41 N. W. 879); *Mayor, etc., of Niles* v. *Muzzy*, 33 Mich. 61 (20 Am. Rep. 670); *McBride* v. *City of Grand Rapids*, 47 Mich. 236 (10 N. W. 353); *Converse* v. *United States*, 21 How. 463.

An examination of all of these cases, except *Roulo* v. *Board of Auditors of Wayne Co.*, will show the duties imposed were not germane to those required by law to be done by the officer as an officer. He could do them or not, as he chose. They were duties outside of and different from his duties as an officer, which he might refuse to do if he desired; and it was held that, if he performed the duties, he might receive compensation for so doing. In the *Roulo Case* the right to compensation was upheld by a divided court; Justices CAMPBELL and SHERWOOD being of the opinion he could not recover. The other Justices were of the opinion that, as the law of 1887 gave compensation for the additional service to all the counties in the State, not excepting Wayne county, the register of the latter county was not excluded from the compensation fixed by the law of 1887 because of the provisions of the local act passed in 1879. None of these cases establish the position of the relators.

Can it be said that any duties have been imposed upon the relators which they might lawfully refuse to perform? If so, our attention has not been called to them. It is true that more duties have been imposed upon them than they were called to do when the Constitution was adopted, more than 50 years ago, because of the fact that they are officers of a great and growing State. Nearly all of these new duties are requirements providing for the examination and auditing of claims against the State not otherwise provided for by general law. The others are of a transient character, and are germane to the duties of the office.

In this discussion it will not do to overlook the fact that not only are the offices of State treasurer, secretary of State, and land commissioner constitutional ones, but the board of State auditors is a constitutional board, made up of these constitutional officers. It comes into being because the Constitution created it. Its membership may not be added to or diminished except by a change in the Constitution. The relators are members of that board simply because they are State officers, and it is because they are State officers that the duties which devolve upon the board must be discharged by them. The one cannot be disassociated from the other. The identity of the board member and the State officer is the same. As long as he is a State officer he is, because of that fact, a board member, and the moment he ceases to be a State officer that moment he ceases to be a member of the board. It is because the relators hold the State offices which they hold that they constitute the board of State auditors, charged with the performance of the duties imposed upon that board.

In this connection it may be well to again refer to the case of *People* v. *Auditor General, supra.* Prior to the present organization of this court, under the Constitution of 1850, Judge Whipple was a circuit judge from January 1, 1852, until his death, in September, 1855, for which he received his pay as circuit judge. During all of that time he was also a member of the Supreme Court. After his death it was claimed by the administrator of his estate that he was also entitled to the amount of his salary as a member of the Supreme Court, inasmuch as there was a salary attached to that office. This claim was resisted, for the reason that, having received his salary as circuit judge, he could not receive compensation as a member of the Supreme Court. The Constitution at this time provided that the judges of the several circuit courts should be judges of the Supreme Court, four of whom should constitute a quorum. It was provided the circuit judges should receive a salary payable quarterly. Article 9, § 1,

fixed the salary of the circuit judges, and also of the State officers, and then proceeds:

"They shall receive no fees or perquisites whatever for the performance of any duties connected with their offices. It shall not be competent for the legislature to increase the salaries herein provided."

It will be observed this is the same section of the Constitution we are considering. In the act of April 4, 1851, a salary was provided for the judges of the Supreme Court, and it was argued that, as Judge WHIPPLE had discharged the duties of both offices, he was entitled to both salaries. Justice CAMPBELL, speaking for the court, said:

"'The judges of the several circuit courts shall be judges of the Supreme Court' is an exclusive provision, not open to qualification. They hold no separate commission. As judges of the circuit court, and in no other way, they hold the Supreme Court. Together they constitute the court; separately they are circuit judges. There is under the Constitution, as applied to the Supreme Court first organized, no such thing as a Supreme Court judge, properly so called, out of court. Whoever, by the vote of the electors in any judicial circuit, was chosen to be judge of the circuit court, became, without further ceremony, invested with all the authority conferred by the Constitution in both courts. Every judicial officer is required by article 18, before entering upon the duties of his office, to take an oath to discharge its duties faithfully. An oath to perform the duties of the office of a judge of the circuit court would certainly cover any duty devolving upon the person elected.

"If the clause in question simply authorized a circuit judge *to perform the duties of the office* of a judge of the Supreme Court, there would, perhaps, be room for verbal criticism, the correctness of which it would require a comparison of the whole instrument to determine. As we must, in any case, regard the whole instrument, the difference would not be very serious. But when the law says the judge of one court shall *be* judge of another, it uses the strongest words the language affords to express absolute identity. When one ceases to exist, there is no survivorship. The language being so appropriate to convey this idea, and the judicial system being substantially

as it was when a judge of the Supreme Court, who by law could hold no other office whatever, was nevertheless circuit judge, the most reasonable conclusion at which we can arrive is that there is but one office, properly so called, created by the Constitution.

"Is, then, the salary payable for the performance of one class of duties, or is it a remuneration for all? As before remarked, it is payable by the State among the salaries of State officers. Three of those officers, in addition to their separate duties, constitute two boards,—a board of State auditors and a board of State canvassers, each having many and onerous duties. Another is, *ex officio*, a member and secretary of the board of education. These duties are affixed to the offices by the Constitution itself. The provision against increase of salaries and fees and perquisites applies to all of them. It is very true that in their case, as in the case of circuit judges, it is said the officers shall constitute the boards; but if the officer must perform the duties, and if no one else can, it can require no reasoning to prove that what is thus incumbent on him is one of 'the duties of his office.' The salary is not given for one thing or for another. It is given to the governor, to the auditor, to the judge; and it must be understood, as it is plainly expressed, to be the salary for such duties as are imposed upon them officially by the Constitution. The same instrument creating the office, the duties, and the emoluments, they must all be held as belonging together, and constituting a complete guide to the whole matter."

It is clear no one, under the Constitution, except the State treasurer, the secretary of State, and the commissioner of the land office, can discharge the duties of the board of State auditors. If Justice CAMPBELL is right when he says, "But if the officer must perform the duties, and if no one else can, it can require no reasoning to prove that what is thus incumbent on him is one of 'the duties of his office.' The salary is not given for one thing or for another. It is given to the governor, to the auditor, to the judge,"—how can it be said the duties imposed upon the board of State auditors are not duties which pertain to the offices of State treasurer, secretary of State, and commissioner of the land office, who make up the

129 MICH.—42.

board of State auditors? Paraphrasing the language of Justice CAMPBELL, "as State officers, and in no other way, they hold the sessions of the board of State auditors. Together they constitute the board; separately they are State officers." Indeed, the act itself provides the compensation shall be paid to "the several State officers constituting the board of State auditors." When the Constitution provides these officers "shall perform such duties as may be prescribed by law," we are compelled to say it means, not simply such duties as are imposed by the Constitution, but such as are imposed by the statute as well. However much we may regret that the onerous duties so capably performed by the relators are not more amply rewarded, the conclusion is unavoidable that the people meant to control the salaries of the various State officers by fixing the amount thereof in the Constitution, and the remedy is with the people, and not with the legislature or the courts. If the contention of the relators can be sustained, the legislature, by imposing some duty upon any State officer not now required of him, may grant him such compensation as it deems wise, and thus render the provisions of the Constitution inoperative. See *State* v. *Raine*, 49 Ohio St. 580 (31 N. E. 741).

We are not unmindful of the rule of law that legislative acts are presumed to be constitutional, and that the power of declaring them unconstitutional should be exercised with extreme caution. *Sears* v. *Cottrell*, 5 Mich. 259; *People* v. *Blodgett*, 13 Mich. 127; *Attorney General* v. *Preston*, 56 Mich. 177 (22 N. W. 261); Cooley, Const. Lim. (6th Ed.) 218. On the other hand, when the legislature has exceeded its power under the Constitution, disagreeable as the duty may be, this court has no choice except to hold the law unconstitutional. *McPherson* v. *Secretary of State*, 92 Mich. 377 (52 N. W. 469, 16 L. R. A. 475, 31 Am. St. Rep. 587); *Attorney General* v. *Pingree*, 120 Mich. 550 (79 N. W. 814, 46 L. R. A. 407). We cannot resist the conviction that the effect of this leg-

islation is to increase the salaries of three State officers, contrary to the provisions of the Constitution.

The writ is denied.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.