GROESBECK v. AUDITOR GENERAL.

GORMAN v. SAME.

1. STATE OFFICERS—DUTIES—INTENT—POWER OF LEGISLATURE TO
   PRESCRIBE DUTIES LIMITED.
   The authority of the legislature to prescribe duties for
   constitutional officers is limited to such duties as come
   within the general duties within the intent of the framers
   of the Constitution.

2. SAME—SALARY INCREASE — CONSTITUTIONAL LAW — RIGHT TO
   COMPENSATION FOR ADDITIONAL DUTIES.
   Act No. 389, Pub. Acts 1921, providing an additional
   salary for the State treasurer, secretary of State, and the
   auditor general, to compensate them for duties performed
   as members of the State administrative board, organized
   in pursuance of Act No. 2, Pub. Acts 1921, is not in
   conflict with the provisions of the Constitution (Art. 6, §
   21) fixing the salaries of State officers, providing that they
   should not receive any fees or perquisites whatever for the
   performance of any duties connected with the office, and
   that it should not be competent for the legislature to
   increase the salaries therein provided, since the duties
   to be performed as members of said board are foreign
   to their official duties as such State officers, and are such
   as may not be imposed upon them by the legislature by
   reason of their office.

Mandamus by Alex. J. Groesbeck, governor and
chairman of the State administrative board, and Frank
E. Gorman, State treasurer, to compel Oramel B.
Fuller, auditor general, to draw his warrant for the
payment of certain salaries.    Submitted October 11,
1921.   (Calendar Nos. 29,932, 29,933.)   Writs granted
November 3, 1921.

*Merlin Wiley*, Attorney General, and *Clare Retan*,
Assistant Attorney General, for plaintiffs.

*George L. Hauser*, for defendant.

On the right of officer to increased compensation when
statute or ordinance increases his duties after his election or
appointment, see note in L. R. A. 1918E, 761.

SHARPE, J.   A State administrative board is created by Act No. 2, Pub. Acts 1921, of which the governor, plaintiff herein, is made chairman.   The other members of the board are Charles J. De Land, secretary of State, Frank E. Gorman, State treasurer, Oramel B. Fuller, auditor general, Merlin Wiley, attorney general, Frank S. Rogers, State highway commissioner, and Thomas E. Johnson, superintendent of public instruction.   The allegations in the petition are all admitted in the answer.   Those material to the issue here presented are set forth:

"IV. That among the duties imposed upon said board are the exercise of general supervisory control over the functions and activities of all administrative departments, boards, commissions and officers of the State and all the State institutions.   In addition thereto said board performs all the duties heretofore vested by law in the State budget commission, the State purchasing agent and the advisory board in the matter of State purchasing.   Said board also exercises control over the system of State accounting and the manner of handling such work.   The aforesaid confers upon said board direct and complete supervision over the State budget, all State purchasing, State accounting, the State accident fund, department of agriculture, expenditure of State appropriations, State building activities, all matters of State finance including bond issues and expenditure of the emergency fund, and the regulation of the sale of steamship tickets and foreign exchange.   It also confers upon said board supervision and primary control over the department of public safety, department of conservation, State highway department, department of labor and industry and the State welfare department.

"V. That said board was duly organized upon the taking effect of said Act No. 2 of the Public Acts of 1921, and since its organization said board has held two regular weekly meetings and a special meeting almost every day since its organization, and has performed all the duties imposed upon it by the provisions of said act; that in addition to attending the regular meetings of said board its members have from time

to time served upon various committees appointed by your petitioner, the appointment of which has been made necessary owing to the duties which have been imposed upon said board.

"VI. By the provisions of Act No. 389 of the Public Acts of 1921, the State treasurer, the secretary of State and the auditor general for all duties prescribed for and imposed upon them as members of the State administrative board were given compensation at the rate of twenty-five hundred dollars per year in addition to their salaries as heads of their respective departments.    Said act providing for the payment of this compensation became effective on the eighteenth day of August, A. D. 1921."

At a session of the board held on July 15, 1921, the names of the officers designated in paragraph VI were ordered placed on the pay roll of the board at the rate of compensation fixed in said Act No. 389 and such roll duly certified to the defendant auditor general, who refused to draw his warrant on the State treasurer in order that payment thereof might be secured.    Mandamus is now sought by the governor as chairman of the State administrative board and by the State treasurer to compel him to do so.

The defendant justifies his refusal on the ground that said Act No. 389 is in conflict with the following provisions of our State Constitution:

Article 6, § 1:    "There shall be elected at each general biennial election a governor, a lieutenant governor, a secretary of State, a State treasurer, a commissioner of the State land office, an auditor general and an attorney general, for the term of two years. They shall keep their offices at the seat of government, superintend them in person and perform such duties as may be prescribed by law."    *    *    *

Article 6, § 21:    "The governor and attorney general shall each receive an annual salary of five thousand dollars.    The secretary of State, State treasurer, commissioner of the State land office and auditor general shall each receive an annual salary of twenty-five

hundred dollars.   They shall receive no fees or perquisites whatever for the performance of any duties connected with the offices.   It shall not be competent for the legislature to increase the salaries herein provided."

The question presented is whether the legislature may provide that compensation shall be paid these three constitutional officers for the performance of the duties imposed on them by the act creating the State administrative board.

The applicable provisions of the Constitution have been quoted.   Section 1 of article 6 provides for the election biennially of certain State officers, that they—

"shall keep their offices at the seat of government, superintend them in person and perform such duties as may be prescribed by law."

Certain specific duties are imposed on the secretary of State, State treasurer and commissioner of the land office by section 20.   They shall constitute a board of State auditors, a board of State canvassers, act as a State board of escheats and a board of fund commissioners.   Section 21 fixes the salary of all such State officers and provides that:

"It shall not be competent for the legislature to increase the salaries herein provided."

The duties of a public officer are seldom defined with precision in the provision of the Constitution or act of the legislature creating such office.   The Constitution imposed on two of these officers the duty to serve on the boards as provided in section 20, and on the three of them such duties as may be prescribed by law, that is, such as the legislature may lawfully impose.   While the title to the office and the place it occupies in our political system may be and usually are indicative of the duties to be performed, we have no doubt that other duties within its scope which, although collateral

and incidental, naturally and properly serve to aid and further the accomplishment of the purpose for which the office was created, may be prescribed as a part of the service to be rendered by the official.   These offices were created to secure to the State certain officials who, as the heads of departments, should superintend its affairs.   This duty devolves on them as to all matters pertaining to their several offices or administrative departments.   The fact that several were created and administrative departments thus provided for leads to the conclusion that the duties of such officials were regarded as separate and distinct from each other and that it was expected that the legislature, by a wise exercise of discretion, would apportion the administrative affairs of the State among them, having in mind the office or administrative department on which the performance of a prescribed duty would, under the title of the office, naturally fall or that office to which the particular duty pertained or was incident.   In the exercise of its discretion in this respect, the legislature could not have imposed on the secretary of State the duty of receiving or disbursing the moneys of the State as this duty pertains to or is incident to the office of State treasurer, nor could the duty of looking after the public lands have been assigned to the attorney general or auditor general.   This reasoning leads to the further conclusion that as new duties of an administrative character arise and are provided for by law, the legislature must determine to what office or administrative department they naturally or appropriately belong.   With its expressed judgment as indicated in the legislative act, the courts will not interfere, except in cases where it clearly appears that duties are imposed on an official of a character and nature wholly foreign to his office.   It could scarcely be claimed that the duties of the secretary of State might be enlarged by making him warden of

a prison or that the State treasurer might be made a superintendent of a normal school. This leads us further to conclude that the framers of the Constitution when they created these offices and fixed their salaries had distinctly in mind not the particular but the general duties which might be imposed on each of these officials. The authority of the legislature to prescribe duties is, and must be, subject to limitation. The official cannot be required to perform all manner of public service at the will of the legislature. Many boards and commissions have been provided for by law for the purpose of carrying on the general functions of the State government. To that end a public utilities commission has been provided for and the duties of its members defined. When we consider these duties, could it be claimed that they might have been imposed on the secretary of State, State treasurer and auditor general by designating them officially as such commission?

With these considerations in mind, let us examine the duties imposed on these officials by the act in question. They are not to act individually. They are required to serve with the others named therein as members of a board designated "The State Administrative Board." This board has—

"general supervisory control over the functions and activities of all administrative departments, boards, commissioners, and officers of the State, and of all State institutions."

It may—

"intervene in any matter touching such functions and activities and may by resolution or order, advise or direct the department, board, commission, office or institution concerned as to the manner in which the function or other activity shall be performed and may order an interchange or transfer of employees between departments, boards, commissions and State institutions when necessary."

It is made—

"the duty of each and every official and employee connected with any administrative department, office or institution of the State to follow the direction or order so given; and to perform such services in the carrying out of the purposes and intent of this act as may be required by the board."

It is further provided that—

"failure so to do shall be deemed to constitute malfeasance in office and shall be sufficient cause for removal."

The enumeration of these duties makes it apparent that they may not be imposed on these constitutional officers as such. They are clearly without the scope of their respective offices; wholly foreign to the purpose for which the office was created. By no stretch of the imagination can they be said to have been within the minds of the framers of the Constitution at the time of its adoption.

The purpose of this act is apparent. The legislative department, with a view to greater efficiency and economy in the conduct of the affairs of the State, created this board, and authorized it to exercise the supervisory control provided for. The necessity for frequent meetings was foreseen. Any of the citizens of the State might have been designated as its members. Their appointment by the governor might have been provided for. But, influenced by considerations which appealed to the members, and with which we have no concern, the heads of several of the administrative departments were designated to constitute the board. No individual duty was assigned to the members nor can each one under the act have any individual service to perform. Their official titles were used merely for the purpose of designating the individuals who should compose the board. See *City of Detroit* v. *Redfield,* 19 Mich. 376.

As has been said, the duty imposed must belong to the office; it must fall within the ordinary range or scope of the work of such office. The duties provided for in the act clearly do not do so. If the State treasurer as such may be required to act as a member of a board exercising supervision over the State highway department, may he not be required by law to perform all of the duties of State highway commissioner, or the auditor general be required to act as a commissioner of agriculture? The duty prescribed must be an official one, else the incumbent cannot be compelled to perform it, and if rendered by him it may be compensated for without a violation of the provisions of section 21 of article 6 of the Constitution.

The conclusion reached is, we believe, sustained by the great weight of authority. Our own case of *Warner* v. *Auditor General*, 129 Mich. 648, is relied on by defendant. The opinion in that case, written by Mr. Justice MOORE, is an able and exhaustive discussion of the question there presented. It is in no way controlling of the issue before us. The proceeding was mandamus to compel payment to the secretary of State, State treasurer and commissioner of the land office of the compensation provided for by Act No. 171 of the Public Acts of 1901 for services rendered by such officials while acting as members of the board of State auditors. As the Constitution created this board and designated these officials to act as such, it was held that additional compensation could not be provided for them for such service. The distinction is pointed out between duties imposed by the Constitution and those prescribed by the statute. The limitation upon the power of the legislature in prescribing the duties of officials was recognized. In discussing *Roulo* v. *Board of Auditors of Wayne Co.,*

74 Mich. 129, it was said that the duties there sought to be imposed were—

"outside of and different from his duties as an officer, which he might refuse to do, if he so desired."

The following Michigan cases will be found instructive:

In *City of Detroit* v. *Redfield, supra,* the plaintiff, as comptroller of the city, was authorized and directed by a resolution of the common council to perform certain duties relative to the issue and sale of so-called "soldiers' bounty bonds." It appeared that he received an annual salary as such comptroller and it was insisted that he was not entitled to extra compensation for the duties imposed on him under the resolution. The first question considered was whether the services performed came within his official duties as comptroller, in other words, whether, by officially designating him as a person to perform the duty, such duty thereby attached to his office and became a part thereof. The court said:

"The resolution appointing him, expressly designated him as 'the agent of the city' for this purpose, and the use of the word 'comptroller' in such connection, would naturally be taken as a mere designation of the person intended—a mere substitute for the name of the individual. But the duties required by the act to be performed by this 'agent of the city' were wholly foreign to his duties as comptroller, as defined by the charter."

It was pointed out that while the charter, after enumerating the duties of the comptroller, requires him to "also perform such other duties as are prescribed by this act, or may be prescribed by the common council, subject to the provisions of this act," the common council "could not prescribe any duties to the comptroller which do not come within the scope, and are in no way subject to the provisions of the

charter, and which are of an entirely different nature from those required by the charter." It is further said:

"It is unreasonable to suppose the legislature intended that such services and to such an amount should be performed without compensation."

In *McBride* v. *City of Grand Rapids*, 47 Mich. 236, it was held that a police justice, appointed by the council to assist in drafting ordinances for the city, was entitled to recover compensation therefor, such service being acts outside of his official duty. See, also, the cases cited and quoted from in *Warner* v. *Auditor General, supra.*

The authorities are reviewed and discussed at considerable length in a note to *Moore* v. *Nation,* 80 Kan. 672 (103 Pac. 107, 23 L. R. A. [N. S.] 1115), published in 18 Ann. Cas. 397. We refer to but a few of them.

In *Love* v. *Baehr,* 47 Cal. 364, a quite similar question was presented. A statute of that State required the attorney general to serve as a member of the State board of examiners, with duties somewhat similar to our board of State auditors, and provided for compensation for such service. The constitution of that State provided that certain executive officers, of which the attorney general was one,

"shall each at stated times, during their continuance in office, receive for their services a compensation, which shall not be increased or diminished during the term for which they shall be elected; but neither of these officers shall receive for his own use any fees for the performance of his official duties."

The statute provided that certain officers, among them the attorney general, shall not

"receive any other compensation whatever for any duties that are now or may hereafter be required of them by law, than such as is fixed by this act. No

new office, which is now or may hereafter be created, the duties of which in whole or in part shall be required to be performed by such officer, shall entitle them to receive any extra compensation therefor."

In discussing the power of the legislature to impose this additional duty on the attorney general, the court said:

"It is admitted that the constitution contains no express limitation on the power of the legislature in this particular. But we think a limitation is necessarily implied from the definition of the office. From the earliest period of our history as a nation, almost every State in the Union had a secretary of State, controller, treasurer, and attorney general; and the general nature of the duties pertaining to each were perfectly well known to the framers of our constitution. It is clear beyond controversy, that in establishing similar offices here, the framers of that instrument had reference to the same general class of duties, which it was well known pertained to such offices elsewhere. The constitution provides for the election of a superintendent of public instruction, whose duties are not defined; and might have provided for the election of a State geologist. Can it be claimed with any show of reason, that the legislature could compel either of them to become ex officio warden of the State prison or superintendent of the State lunatic asylum? It is not usual in State constitutions to define the particular duties of subordinate officers; that being the peculiar province of the legislature, which, it is to be presumed, will prescribe only such duties as in their nature have heretofore appertained to similar offices elsewhere. In the performance of this duty, the legislature may rightfully exercise a wide discretion. It may assign to each of these officers any duties, which, by the most liberal interpretation, can be held to come within the general scope of that class of duties which have usually appertained to such offices, as they were understood by the framers of the constitution. In cases of doubt, it would be the duty of the courts, in deference to the legislative authority, to solve the doubt in favor of the power as exercised; and they ought to interfere

only in a clear case, when the legislature has manifestly transcended its authority by imposing upon one of these officers duties which, in their nature, are wholly foreign to his office."

Additional quotations from this decision will be found in *Warner* v. *Auditor General, supra.* The conclusion was reached that the legislature had no power to impose the duties of a member of the board on the attorney general as an incident to his office.

In *Thomas* v. *O'Brien,* 138 Ky. 770 (129 S. W. 103), the question was presented as to whether certain magistrates, who by virtue of their office became members of the fiscal court of the county, could be required to serve as a building committee, a turnpike committee, etc., without extra compensation for so serving. The statute of the State providing for compensation of officials of the court prohibited the changing thereof during the official term. The question presented was whether the magistrates were acting officially as members of the court while serving on such committees. The court said:

"The magistrates in acting upon the committees do not act as magistrates nor could they claim the privilege of so acting by virtue of their office. Nor could they be required to so act because of their membership in the court. * * * If any one else had been appointed a committee to do the identical work done by appellant, it is not questioned that it would have been within the legal power of the fiscal court to have paid him for it out of the public revenues."

In *State, ex rel. City of Seattle,* v. *Carson,* 6 Wash. 250 (33 Pac. 428), a statute imposed on county treasurers the duty of assessing and collecting city taxes and provided compensation therefor. In refusing to enjoin the payment thereof the court said:

"Appellant further contends that said act is in violation of § 8, article 11 of the constitution, which provides that 'the salary of any county, city, town

or municipal officer shall not be increased or diminished after his election or during his term of office,' etc., and also § 25, article 2, which provides: 'Nor shall the compensation of any public officer be increased or diminished during his term of office;' and also the first part of § 12, article 11, which denies to the legislature the right 'to impose taxes upon counties, cities,' etc.

"Section 10 of this act of the legislature (Laws 1893, p. 170) provides that each city shall pay to the county treasurer for duties performed by him in the collection of city taxes $500 per year, which shall be in addition to the salary otherwise provided by law. We do not think there is any conflict here, as the additional salary is not paid to the county treasurer as county treasurer, but new duties have been imposed upon him in the way of collection of city taxes, and the additional compensation is provided therefor, a matter which is entirely outside of his former duties as county treasurer for which his previous salary was fixed."

The plaintiffs are entitled to the relief sought. As the defendant will undoubtedly comply with the order of the board on his attention being called to this opinion, it will not be necessary to issue the writ. No costs will be allowed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.