MICHAEL P. ROULO v. THE BOARD OF AUDITORS OF WAYNE COUNTY.

*Mortgage-reporting law—Fees of register of deeds of Wayne county.*

1. Act No. 262, Laws of 1887, allowing registers of deeds compensation for reporting mortgages to the supervisors of the county for assessment purposes, applies to *all* of the counties of the State *alike*.

2. Act No 331, Local Acts of 1879, providing for the compensation of certain officers of Wayne county, only applied to the salary and compensation *then* legitimately growing out of the duties of the various offices, and does not bar a recovery by the register of deeds of the statutory fees allowed for reporting mortgages for assessment purposes.

74 MICH—9.

*Mandamus.* Argued January 15, 1889. Granted February 15, 1889.

Relator applies for a *mandamus* for the allowance of his statutory fees for reporting mortgages to the assessing officers of Wayne county.

*Edwin F. Conely,* for relator.

*F. A. Baker* and *J. V. D. Willcox,* for respondents.

MORSE, J. The Legislature of 1887 passed an act (No. 262) providing for the reporting of mortgages to the supervisors and assessing officers of the various counties of this State, and to the registers of deeds of other counties wherein the mortgagee resided. This duty, under the act, devolved upon the registers of deeds. For making the list, and notifying the proper officers, the register was authorized to receive the following fees:

"The register of deeds shall receive ten cents for every such notice, to be audited and paid in the general manner out of the contingent fund of the county where the mortgagee resides, and the said register of deeds shall also receive for each notice to the assessing officers in his county, as provided in this act, the sum of ten cents, to be audited and paid out of the contingent fund of said county." Act No. 262, Laws of 1887, § 5, p. 343.

"Any violation of the provisions of this act shall be a misdemeanor, and, upon conviction thereof, the register of deeds shall be subject to a fine not exceeding one hundred dollars." Section 7.

No exception as to Wayne county was made in this act. The relator, the register of deeds of Wayne county, performed his duty under this act, and in due time presented to the board of auditors of that county his bill, amounting to $1,710.20, for his fees under the statute for such performance. The correctness of his bill is not disputed as to the amount thereof, but the

respondents refuse to audit and pay the same, upon the theory that he is not by law entitled to the same, or any compensation for his services under this act. They rest upon the law of 1879. In the local acts of that year is found an act entitled—

" An act to provide for the compensation and to prescribe the duties of certain officers of the county of Wayne."

Section 1 of that act provides for salaries to the county treasurer, prosecuting attorney, county clerk, and register of deeds of that county. The salary of the register, as fixed by that act, is to be not less than $2,500, nor more than $3,500, to be determined by the board of auditors, and not to be increased or diminished by said board during any term of office. While Roulo held the office the salary was fixed at the maximum. Section 1 of this act also declares:

" The officers named shall not be entitled to any compensation other than said salary for the performance and discharge of any duties growing out of their office, or any office the duties of which they exercise by virtue thereof."

Section 2 of the act makes it the duty of these officers to collect—

" All the fees *now provided by law*, except as provided in section three of this act, for the performance of duties growing out of their said offices."

Section 3 does not relate to register of deeds. Section 4 provides for the payment of the fees mentioned in section 2 to be paid into the county treasury. See Local Acts of 1879, p. 203.

It is evident to my mind that this act of 1879 only applied to the salary and compensation then legitimately growing out of the duties of the various offices; and the fees to be collected and paid into the county treasury are

expressly limited to those then provided by law. In 1887 the Legislature, by a public law relating to all the counties and all the registers of deeds in this State, and new duties to the office of register of deeds, and provide a penalty for the non-performance of such duties, and provide a payment by fees for the services entailed thereby. Is there any good reason why the relator as register of deeds of Wayne county should be exempted from the provisions of this act? And if the Legislature intended that he should be so exempted, why did not the act of 1887 so provide? If the Legislature did not so intend, then it is plain that the later general law must supersede and overrule the local act of 1879.

It is admitted that the fees which the relator has collected under the act of 1887 belong to him, and that he cannot be required to pay the same into the county treasury. If the act of 1879 is in force, to the effect that he can receive no other salary or compensation than the $3,500, I fail to discern the logic by which he is entitled to the fees he receives from notices sent to the officers of other counties, and not to the fees for sending such notices to the officers within his own county. If the one act is not the "performance and discharge of a duty growing out of his office," I cannot see why the other is. It is said that the county of Wayne has no concern with the fees that he receives from other counties. In the same sense the county of Wayne has no concern with the fee that the register receives from a non-resident who files a deed or mortgage for record, or procures a transcript of the record. The fees that he receives from other counties in this State swell his salary, as do the fees from his own county, and his compensation is increased the 10 cents for every notice as much when it is received from one county as another.

It is sought to be given as a reason why the law of

1887 should not apply to Wayne county, when by its terms it does so, that the act of 1879 provided that the board of auditors should fix the number of deputies and clerks in the county offices, and the amount of their compensation, and requires that both the number and compensation of such deputies and clerks shall be sufficient for the work in the office, and that some of the work in this case was done by a clerk already in the office. This, in my opinion, can have no bearing upon the question to be here determined. While the register has the right to name his deputies and clerks, the number to be employed, and the price to be paid them, are entirely within the discretion of the auditors, and no court could reach them unless a clear abuse of this discretion was shown. The fact in the present case is, however, that the register hired an extra man to do this work, and paid him out of his own pocket; or he put a clerk in the office upon the work, and hired a man to do the ordinary work of such clerk, which amounts to the same thing.

What the auditors were willing to do in this case cannot affect the true interpretation of the meaning and intent of the act of 1887. They may not be willing to supply extra help hereafter to the register in this matter; and the difficulties in the way of that officer's making a showing that he needs the extra help, and in compelling the auditors to furnish it, are very apparent to any one conversant with the cases in this State involving the abuse of discretion by public officers, and especially of auditing boards.

The Legislature, by the act of 1887, imposed a new duty upon the register,—one that never belonged to his office before, and one which was not contemplated, and could not have been, when his salary was fixed by the auditors under the law of 1879. The act imposing this new duty, which he must perform under a penalty,

imposed also a great responsibility upon him. For the performance of this duty, and the responsibility necessarily attending it, the Legislature saw fit to give him an additional compensation over and above that heretofore received in the performance of the ordinary duties of his office. · Our previous decisions are to the effect that he is entitled to it. *White v. East Saginaw,* 43 Mich. 567 (6 N. W. Rep. 86); *Detroit v. Redfield,* 19 Id. 376; *McBride v. Grand Rapids,* 47 Id. 236 (10 N. W. Rep. 353). If the Legislature had provided payment for the services imposed by this act by a stated sum, of say $500, to be paid the register out of the county treasury, I do not think any person would have for a moment contended that Wayne county was exempt from such payment by reason of the local law of 1879. Nor do I think the argument any more tenable because the compensation is provided by fees to be collected in proportion to the amount of work done.

The case of *Stetson v. Supervisors,* 36 Mich. 10, to my reading, does not bear out the claim made for it in this case. It is contended that it meets and settles the question here. I do not so understand it. In Stetson's case he claimed compensation as clerk of the board of supervisors. This was correctly held to be included in his salary. He was allowed by the board of supervisors for the year in which he made his claim the sum of $1,000 salary "as county clerk." Under the statute then in force (1876, Comp. Laws of 1871, § 470) the clerk of each county was allowed a reasonable compensation, to be fixed by the board of supervisors, and to be paid by the county. All the items for which he claimed extra pay were for services that were imposed upon him by the Legislature before his salary was fixed by the board, and the Court found specifically, in the opinion filed by COOLEY, C. J., that—

"There was no reason to question the truth of the return that the salary was understood by the board to be in full for all services by the relator for the county."

And the Court found that the relator himself understood that all his fees were covered by the salary. This is not the case here, in any respect. Here the act of the Legislature giving additional compensation for the services, and creating the services to be performed, went into effect and became a law after the salary of Roulo had been fixed; and no reason, therefore, existed why the auditors or Roulo should understand that the services to be performed under the act were to be compensated out of his salary. On the contrary, the language of the act, and the increased work growing out of a new duty not belonging to his office, save as it was made so by the act itself, would naturally lead the relator to suppose that he was to be treated under the act the same as the other registers of deeds in the State.

As was well said upon the hearing of this motion, if the law of 1879 precludes the register of deeds of Wayne county from receiving the fees that the law of 1887 plainly gives him, then it must also apply to all the other officers of Wayne county mentioned in the act of 1879. By statute passed since 1879, the prosecuting attorneys of the State are now required to appear in divorce cases involving the rights or interests of children of 14 years or under, and may contest the application for divorce. For making such contest he is. to receive five dollars in each case, the same to be paid by the county. Laws of 1887, p. 152. They are to appear in the Supreme Court, and argue appealed criminal cases, the compensation therefor to be fixed by the Board of State Auditors and paid by the State. Laws of 1887, p. 80. But under the local act of 1879, heretofore referred to, the salary of the prosecuting attorney of Wayne

county is fixed by the auditors, and by the terms of that act he is not entitled to any compensation other than said salary for the performance or discharge of any duties growing out of his office. By the same reasoning which has been applied to this act by the respondents in Roulo's case, the prosecuting attorney of Wayne county cannot receive, at least, the five dollars in the divorce cases, as that comes out of the county.

I must therefore hold that the Legislature intended, in the act of 1887, to apply the law to all the counties of this State alike, as the statute reads, and to give the registers of deeds the like compensation for their services under it, without excepting the county of Wayne, as we are not to guess that the Legislature forgot that it had previously enacted the local law of 1879 as to that county.

The writ will issue as prayed.

CHAMPLIN and LONG, JJ., concurred with MORSE, J.

CAMPBELL, J., (*dissenting*). Relator, as county register of Wayne county, prepared and delivered the notices of mortgage records required by Act No. 262, Laws of 1887, to be furnished by county registers for the information of taxing officers. Those furnished in Wayne county for county purposes entitled him, if chargeable at all, to $1,710.20. He presented his bill for that sum to the board of county auditors for allowance. The services are not disputed, but the claim was rejected because his office is salaried; and respondents insist that his salary covers all claims for services against the county. He applies for a *mandamus* to compel its allowance.

In 1879 a law was passed, found on page 203 of the Local Acts of that year, entitled—

"An act to provide for the compensation and to prescribe the duties of certain officers of the county of Wayne."

Section 1 of that act provides for salaries to the county treasurer, prosecuting attorney, county clerk, and register of deeds of that county,—that of the register to be not less than $2,500, nor more than $3,500.    It requires the amount to be fixed by the board of auditors, and neither increased nor diminished during any term of office.    It then declares:

"The officers named shall not be entitled to any compensation other than said salary for the performance and discharge of any duties growing out of their ·office, or any office the duties of which they may exercise by virtue thereof."

By section 2 it was made their duty to collect—

"All the fees now provided by law, except as provided in section three of this act, for the performance of duties growing out of their said offices."

Section 3 relates to certain county fees in court cases. Section 4 requires all such fees as are mentioned in section 2 to be paid into the county treasury, into the general fund.    Section 8 requires the auditors to fix the number of deputies and clerks in the county offices, and their compensation, but leaves each officer to make his own appointments, and requires that both number and compensation shall be sufficient for the work of the offices.    In the present case the mortgage reporting work was done by a clerk in the office of the register, and some extra pay was given him by the auditors.    Relator claims to have paid another person for performing duties which that clerk left for this specific work.

The mortgage assessment law of 1887 contains this provision:

"The register of deeds shall receive ten cents for every such notice, to be audited and paid in the general manner out of the contingent fund of the county where the mortgagee resides, and the said register of deeds shall also receive for each notice to the assessing officers in his

county, as provided in this act, the sum of ten cents, to be audited and paid out of the contingent fund of said county."

It appears, therefore, that a part of the services directly concern his own county, and a part are rendered to outside counties, in which his own county has no concern. The present controversy only relates to services rendered to relator's own county.

The question presented by the record before us is discussed on two opposing theories. Relator claims that, inasmuch as section 2 only requires such fees as were provided for by existing laws in 1879 to be accounted for and collected, the fees provided for in the mortgage law of 1887 are not within its terms. Respondents claim that, without reference to the fees collected or uncollected, the salary was intended to pay all that the register could claim from the county for services in office. It is, we think, correctly claimed that the fees which the register is to collect and pay into the county treasury are such fees as existed in 1879. But it is equally plain that fees or recompense due him, which he has to collect from the county, cannot be covered by those sections. The law will not bear the construction that he must first collect from the county, and then pay back the same money. There may have been very good reasons why the Legislature of 1879 should not attempt to anticipate future legislation concerning the destination of future fees not then covered by legislation. When any Legislature imposes new duties, or gives new compensation, it may, and often does, provide what shall be the rights of officers arising out of the change; and when the future law is passed, it must be construed according to what seems to be its purpose. There is nothing in the law of 1887 which provides any destination for the fees received by registers from outside counties, and it is

not covered by the law of 1879 concerning the payment of fees into the county treasury of Wayne county. This may or may not have come within the notice of the Legislature. It is certainly an omitted case, and the fees must now belong to the register, because not ordered to be paid elsewhere. But it does not follow that compensation from his own county, which never can come into his hands until his accounts are audited, is in the same position. There is no constitutional objection to changing or increasing the duties attached to a public office. It is done constantly, both as to executive and administrative and as to judicial officers. It must depend on the legislative will whether duties strictly official, thus increased, shall be paid for separately, or included in some method of pay already provided. It is a question of legislative intent, and not of constitutional law. Presumptively, perhaps, duties imposed upon an officer, and not belonging to the office, if any compensation is provided for them, do not come within the strictly official rule of compensation. This point we do not undertake to decide absolutely, because every case is so dependent on its own circumstances that it may need consideration. But we held in *White v. East Saginaw*, 43 Mich. 567 (6 N. W. Rep. 86), that when a sheriff was appointed to collect taxes the statute treated him as assuming new and special duties, under distinct obligations, and the sureties on his bond as sheriff were not bound for his delinquencies as tax collector. We have also held that a public officer who performs by employment extraofficial duties, which he was not by law bound to perform as such officer, might require pay for them beyond his official salary. Thus in *Detroit v. Redfield*, 19 Mich. 376, where the comptroller of Detroit was employed to deal with certain bonds issued to the city by Wayne county, to be used in paying bounties, and pay out and distrib-

ute them, the service was held to be in no sense an official duty, and he was entitled to pay for it, without reference to his official salary. In *McBride v. Grand Rapids*, 47 Mich. 236 (10 N. W. Rep. 353), and 49 Mich. 239 (13 N. W. Rep. 581), it was held the police justice of Grand Rapids was not bound to give his services to the city in compiling ordinances, and, if so employed by city authority, could demand pay for it. In *Police Justice v. Supervisors*, 38 Mich. 421, a case arose where, under the city charter of Grand Rapids, the police justice was to be paid by city salary, while the fees which would have been due from the county for such services as he rendered, had they been performed by an ordinary justice, were required to be paid into the city treasury. In that case it was held that the fees did not belong to him, even for purposes of collection, and he could not enforce their payment, although they were for his actual services, but that the city should demand and receive them. The statute of 1879 in like manner makes the fees of the office of register of deeds belong to Wayne county, but, unlike the charter of Grand Rapids, makes the officer bound to collect them himself, and pay them over.

A case quite like the one before us arose in *Stetson v. Supervisors*, 36 Mich. 10. In that case the supervisors of Calhoun county had fixed the clerk's salary under a statute which (Comp. Laws of 1871, § 470), provided that the clerk of the county should " be allowed for his services as such clerk a reasonable compensation, to be fixed by the board and to be paid by the county." This law was in force a long time before some of the statutory duties of clerks and their compensation had been provided for. The supervisors had provided for the payment of a fixed sum for his services " as county clerk," and not as clerk of the board. In addition to his salary he rendered a bill for

other matters, which he claimed were outside of it. They include birth and death reports to the Secretary of State, fees for drawing jurors, services on a building committee, purchases of wood, and tree planting, services as clerk of the board of supervisors, and services as clerk in criminal cases. This Court held that his salary as county clerk covered all his official duties as such clerk, including as well those to which the law had attached specific fees as general services; but that his purchases and planting, and acting on building committees, were not official, and not so covered.

The statute of 1887 very clearly attached the duties now in question to the office of register of deeds of each county, and made him responsible for their performance. In most of the counties he is paid by fees, and would be so paid for the new services. But the local statute of 1879 by section 1, before referred to, makes his salary cover all of his official duties, whatever they may be, and does not refer to, and is not qualified by, sections 2 and 4, which provide that he shall pay the fees he collects under existing laws over to the county treasury. As already suggested, the language of those sections could not very well apply to fees collected from the county itself. Such general and sweeping words as make a salary cover all official acts would naturally cover all new and strictly official duties, while, on the other hand, the salary would not be reduced by any reduction of fees or lightening of burdens. It is the official recompense for whatever he does under official duty, and there is, so far as we can discover, no purpose in the act of 1887 to make any new rule as to methods of compensation of registers, or any design of interfering with salaries where salaries have been substituted for fees. A local statute containing a policy confined to one county, and introducing a special rule for it, can hardly be supposed to have been

within the mind of the Legislature, as intended to be changed so as to make it subject to the general policy on one item and opposed to it on all the rest. Under any such rule every new provision of statute affecting the jurisdiction of justices or circuit courts, and making no reference to police or municipal courts, would take the new case out of the courts where all similar cases are disposed of, and give to other courts jurisdiction in single cases outside of their ordinary reach. Such a construction is not the natural one, and should not be followed, without a plain legislative intimation of a new policy in the particular regard.

The provision concerning clerks and deputies was intended to enable the business force of the county offices to be increased as fast as needed. The duties introduced by the law of 1887 are similar in character to the other duties of the register. They are purely clerical and ministerial, and can be done by a clerk as well as by a register. If the duties increase, the auditors are required to act so as to relieve them. There is therefore no force in the argument that the register will be damnified by confining him to his salary. On the other hand, it would not be reasonable to compel the auditors to pay clerks for doing his work and to pay him also, or to pay him for this work a large price, when the statutory fees for the other work in his office are often just as large, and are nevertheless merged in his salary.

We think the *mandamus* should be denied.

SHERWOOD, C. J., concurred with CAMPBELL, J.