Roberts, J.
Heard on demurrer to petition.
The petition in this action recites that the defendant is and was ■at all times therein mentioned a member of the board of county commissioners of Ashtabula county, Ohio; that the relator is the prosecuting attorney of said county, and that he brings the action for the benefit of the county.
The petition contains two causes of action, the first of which alleges, in substance, that subsequent to the 23d day of April, 1904, when the salary law relating to county commissioners went into effect', the defendant, as a member of' the board of county commissioners, received from the county on May 20th, 1905, $48, and on September 23, 1905, $66; that these sums were paid to the defendant by said county for services rendered the county at $3 per day, as a member of the county board of equalization, *102 by virtue of Section 2804 and Section 2813a of the Bevised Statutes of Ohio; -that the receipt of the said sums was illegal and unauthorized by law; and that a repayment has been demanded and refused.
The second cause of action alleges, in substance, that some years ago one James Christy, by last will and testament, bequeathed to the county a sum of money to be used, for educational purposes in the county; that by virtue of a decree of the circuit court of the county, this sum was to be under the control of the county commissioners, whose duty it became to invest said sum and use the profits and proceeds thereof for said purposes, which fund is known as the Christy fund; that the defendant while acting as a member of the board of county commissioners received from.the county as expenses in looking aL ter and investing the money of said fund, as follows: December 12, 1904, $8.70; April 22,1905, $8.35; June 10, 1905, $11.35; July 22, 1905, $6.85; that the payment of said sums, amounting to $35.25, to the defendant, and charged to the Christy fund, was illegal and unauthorized by law.
To this petition the defendant has filed a demurrer in which he demurs to each cause of action separately, and as cause therefor alleges that said causes of action do not state facts sufficient in law to constitute a cause of action against the defendant. This demurrer has been argued and submitted and is now for determination.
The Legislature of the state, in 1902, provided for a bureau of inspection and supervision of public offices. 95 O. L., 511; amended 1904, 97 O. L., 271. .
Under the provisions of this act an examination was made of all Ashtabula county offices, for a period commencing September 1, 1903, and extending to September 27, 1905, by one of the examiners of the bureau, resulting in a voluminous report of over five hundred pages. As a result of this examination and by direction of the bureau this action was instituted.
Because of the wide-spread publicity given to the results of this examination, the general misapprehension existing concerning its scope and character, and the weight and credit which should be given to the findings of the examiner, it is thought *103 to be an act of fairness and justice to now digress briefly concerning the manner of the examination and its effect upon the officers involved.
The object of this law is admirable and its results will without doubt be productive of much good in the administration of public offices in the installing of a uniform system of accounting and performance of the duties of the different classes of offices throughout the state, and, by investigation and legal determination, securing a proper construction of numerous statutes providing for the taxing of costs and fees, and the compensation and expenses of public officials. Much legislation upon these subjects is obscure in meaning, difficult of construction and contradictory in language. In the best exercise of legislative wisdom it is often impossible to foresee and provide for contingencies which are constantly arising under new and changing conditions.
Officers whose duty it is to act under and construe these laws, often, with the best of intentions and in the conscientious performance of their work, arrive at different conclusions. It is the object of this law to remedy these conditions, and, so far as practicable, eradicate these defects. Without a just or fair conception of the purpose of this investigation or of the circumstances attending, or environments surrounding it, many people hastily conclude, because the accounts of some official have, in the opinion of the examiner, been found incorrect, that such official has been false to his trust, and has been guilty of conduct involving crime or moral turpitude. Conceding to the examiner a painstaking and conscientious performance of his duties, it is not apparent that he had any special qualifications for the Avork in Avhich he was engaged. His judgment may or may not have been better than that of the officials whose work he scrutinized. The effect of the findings of the examiner is to call them to the attention of the proper officers and raise issues for determination that there may result throughout the state in uniformity in the performance of public duties. In the ease of The State v. Shaffer, recently decided in the Fulton county common pleas, and affirmed by the circuit court, it was said in the opinion, regarding the report of the examiner under this law:
*104 “The reports, in fact, are so much less than conclusive findings that they bind nobody, are nothing more than recommendations to the prosecuting attorney, who is charged with the duty of acting in behalf of the county treasury, directing his attention to matters of inquiry; and he may very properly ignore them, and should in fact ignore them, if they are at variance with his own honest view of the law.”
It would seem fair that the public should hold in abeyance any opinion until further developments make it justifiable. The report of the examiner, after showing the receipt by Commissioner Coughlan of the two sums, mentioned in the first cause of action, makes this finding: “As the salary fixed by Section 897 as amended April 23, 1904, covers the above services, therefore the drawing of the above amount in addition to the salary is unauthorized and should be returned to the county treasury by Commissioner Coughlan.”
Section 2 of the act of April 23, 1904 (97 O. L., 254), so far as pertinent, reads as follows:
“The compensation provided in the preceding section shall be in full payment of all services rendered as such commissioner. ’ ’
Section 3, after providing specifically for the repeal of a large number of sections and acts, concludes:
“And all other acts or sections of the Revised Statutes, so far as they may be inconsistent with the provisions of this act be and the same are hereby repealed.”
Section 2804, Revised Statutes, reads in part as follows:
“[County board of equalization.] There shall be an annual county board for the equalization of the real and personal property, moneys and credits in each county to be composed of the county commissioners and county auditor, who shall meet for that purpose at the auditor’s office, in each county, on the Wednesday after the third Monday in May, annually.”
Then follows a long enumeration of the powers and duties of such board.
Section 2813, Revised Statutes, provides for a decennial county board which shall be composed of the auditor, surveyor and commissioners of such county.
*105 Section 2813a provides for ,the compensation of members of such boards as follows:
“Each member of the decennial county board, including the county auditor and county surveyor, and each member of the annual county board of equalization shall be entitled to receive for each day necessarily employed in the performance of his duties, including his duties as a member of the board of revision, the sum of three dollars.”
Section 2813a expressly provides for the compensation of the members of the board of equalization at three dollars per day and authorizes the drawing of the compensation of Commissioner Coughlan sought to be recovered back in this action. By the terms of this section he was entitled to pay for his services on the board of equalization, unless the section was repealed by the general provision of the act of April 24, 1904, repealing all sections inconsistent therewith, or unless his right to draw such compensation was withdrawn by the terms of Section 2 of the act of April 23, 1904, 'providing that the compensation provided in the preceding section shall be in full of all services rendered as such commissioner.
Section 2813a, providing for such compensation, is not expressly mentioned in the enumeration of sections and acts repealed in the salary law.
The bureau has furnished no brief and cited no authorities upon the question under consideration, and it is presumed- that it relies upon the terms of Section 897, as amended, as justifying its position' in seeking the recovery of the sums paid Commissioner Coughlan as a member of the board of equalization.
A determination of the question as to whether that part of Section 2813a, providing compensation to the board of equalization, was repealed by the salary law as being inconsistent therewith, involves a consideration of the proper interpretation to be given the salary law; therefore these propositions will be considered together.
Undoubtedly it is the law of Ohio that a public officer is not entitled to pay for services in. the absence of a statute authorizing such payment, and where compensation has been provided by statute he is entitled .only to such pay as has been pro *106 videcl for the performance of the duties of such office. 58 O. S., 109; 47 O. S., 404; 25 O. S., 13; 7 O. S., 237.
The decisions above cited, however, only go to the extent of prohibiting compensation where none is expressly authorized. It is apprehended that there is no rule of law which inhibits by legislative action extra compensation for additional services or for services performed by an officer in some other capacity, and in fact the statutes of Ohio provided pay for commissioners acting as such, and also pay as members of boards of equalization. The present statute, in addition to salary, allows county commissioners pay at three dollars per day in ditch work. There is a line of decisions, including 74 Mich., 129; 47 Mich., 236; 19 Mich., 376, to the effect that a public officer who performs services not within the line of his regular and prescribed duties is entitled to compensation therefor, in the absence of any provision for any such payment.
If the defendant, while acting as a member of the board of equalization, was not in fact acting as a member of -the board of county commissioners, and not in the performance of his duties as such commissioner, and if while acting as a member of these two boards he represented two different and distinct offices, then clearly Section 2813® was not repealed'by Section 897, as being inconsistent therewith. Neither would the provision of Section 2 of the áet of April 23, 1904, providing that the compensation provided in that act should be in full payment of all services rendered as such commissioner, affect the right of the defendant to receive pay while acting on the board of equalization.
It will be noticed that it is provided that the salary shall be in full payment of all services rendered as such commissioner. The use of the words “as such commissioner” seem to indicate a legislative understanding that the commissioners acted otherwise than as county commissioners, and an intention not to take away the right to pay while acting in another capacity. This restrictive language is absent in other prior legislation on this subject.
As Section 2813a provided for compensation for a board of equalization composed of the county commissioners and county *107 auditor add the decennial board which also included surveyor, and it being clear that Section 897 only applied to county commissioners, if it be said that one act was intended to repeal the other as being inconsistent therewith, then we have the singular condition of these two boards in one of which one member, the county auditor, and in the other, both auditor and surveyor, drawing compensation, and the other members, viz., the county commissioners, not entitled to pay, all being county officers with no apparent reason why such distinction should be made.
A question now suggests itself, and that is: Are the duties of the board of equalization such as to be necessarily or probably a part of the duties of the county commissioners, or are such services incident or germane to thé office of county commissioner ?
Broadly expressed, the county commissioners are the representatives and guardians of the county. 15 Ohio, 23.
They are the general agents to represent and act for the county in the transaction of its business (21 O. S., 583). But I have not found an authority that such judicial functions as equalizing the taxes of citizens are incident to such agency of the county. This power is conferred by specific legislation. No reason is discovered why such functions might not as well be conferred upon a board to be elected for that purpose. On city boards citizens are appointed as members. The duties of the board of county commissioners and auditor and surveyor are widely different. If the duties of the board of equalization are incident to the general duties of the members, then it may be inquired to. which members, necessarily not incident to all such members. If incident to the general duties of the county commissioners, then what right, can' an auditor or surveyor have on such board, as the duties can not be also germane to the duties of the office of county auditor and the office of county surveyor ? The board of county commissioners and the board of equalization each have statutory time and place of meetings necessarily separate and distinct from each other. It seems evident that the Legislature had recourse to the offices of county commissioner, auditor, and surveyor only for the purpose of making an ex-offwio way of filling the board of equalization; that the board of equalization is separate and- distinct from the office of county *108 commissioner, and. that merely the persons who are auditor and county commissioners, constitute the board of equalization. If the Legislature in providing for a board of equalization had said, in effect, that it should be the duty of the county commissioners, acting in conjunction with the county auditor, to act as a board of equalization, that might have been indicative of an intention to place the duties of the board of equalization upon the county commissioners. ' But in the use of the language actually employed, that the board, of equalization shall be composed of the board of county commissioners and the county auditor, the other construction that it is simply a designation of ex-officio members is more reasonable.
In the case of Lewis, Auditor, v. The State, 21 C. C., 410, it was held that the services performed on the decennial county board of equalization by the .county auditor, county surveyor and county commissioners, are not so incident or germane to the regular duties of the offices to which they have been respectively elected, as to make the provision for compensation contained in the Iiendley Law, in contravention of 94 O. L., 396, which provided that no act theretofore passed at that session regulating the salaries and compensation of county officers, should be construed to affect or change in any manner the salary or compensation of any county officer elected prior to the passage of- the act. In this case it was held that the county commissioners, auditor and surveyor were entitled to $5 per day while acting on the decennial county board of equalization.
In 43 Mich., 567, it was said—
“The imposition of any duties not incident or germane to the regular duties of his office, upon an officer, does not change his office, but invests him with a new office.”
In 10 O. D., 537, the second paragraph of the syllabus reads:
“The provisions of Section 20, Article II, of the Constitution, that the salary of a county official can not be increased during his term of office, apply only to compensation for duties germane to his office or incidental or collateral thereto and do not apply to services rendered in an independent employment to which he is appointed -by an act of the state Legislature. ’ ’
*109 The fourth paragraph of the syllabus reads:
“Under the foregoing rules a county surveyor who is required by law to perform the duties of a member of the county board of equalization, is entitled to compensation therefor, independent of and without regard to the compensation which he may receive as such county shrveyor.”
In 24 N. J. L. R., 768, it is said:
“It does not follow from the principles laid down that a public officer is botmd to perform all manner of public services without compensation, because his office has a salary annexed to it; nor is he in consequence of holding an office rendered legally incompetent to the discharge of duties which are clearly extra-official outside the scope of his official duty.”
Quoting from 120 U. S.,’ 127:
“Sections 1763-1765, R. S., prohibiting the allowance of additional pay or extra compensation to public officers have no application to the case of two .distinct offices, places or employments, each of which has its own duties and compensation, which offices may both be held hy one.person at the same time.”
To same effect see 110 U. S., 688, and 21 How., 463.
Under a statute providing for the pay of county commissioners which said,-“The pay for such services, including all regular and special meetings, shall never exceed the sum of $100 to each commissioner in any one year,” it was held in 29 Kan., 196, that the limitation of $100 'contained in the proviso above quoted did not include pay for the services of the members of a board of county commissioners while attending meetings to equalize assessments.
It was held by the Supreme Court of California (44 Pac., 575), that county supervisors and ex-officio road commissioners whose compensation as such supervisors is fixed by statute, are in addition entitled to pay as such supervisors.
It is further suggested regarding the question as to the repeal of the provision for compensation of members of the board of equalization, that it is a well known rule that repeals by implication are not favored, and that an implied repeal results only from a later enactment when its terms and necessary *110 operation, can not be harmonized with the terms and necessary-effect of the earlier law. 11 O. S., 27.
If it be claimed that the law providing for county boards of equalization is unconstitutional, if it be held that it is a legislative appointment to a county office, that proposition is answered, so far as this case is concerned, by the rule that such members are at least de facto members until the statute has been held unconstitutional by competent judicial authority in a proceeding appropriate to that end, and in that event acts previous to such judicial determination are valid. 54 O. S., 24.
“The official acts of one who performs the duties of an office created by an unconstitutional statute are, until the statute which creates the office and enjoins the duties, is declared invalid by a court of competent jurisdiction, the acts of a de facto officer.” 16 C. C., 111.
It follows from the reasoning herein contained and from the citations made, that the defendant was entitled to the compensation sought to be recovered in the first cause of action, and the demurrer is sustained thereto.
Coming now to a more particular consideration of the second cause of action, and in addition to what has been herein-before said pertinent and relative thereto, the will of James Christy bequeathed to the county of Ashtabula a sum of money for educational purposes, to be under the control of the county commissioners, they to use and expend it as should seem best in their judgment, to promote and advance the cause of education in said county.
The circuit court directed the payment of said fund to and for the use of the board of county commissioners and to the proper officers thereof. The finding of the examiner regarding the expenses collected by Commissioner Coughlan for services relating to the Christy fund is as follows:
“As the above amounts are covered by his salary and there being no other statute authorizing it, hence the amount so drawn is illegal and should be returned to the county treasury to the credit of the Christy fund.”
No reason, other than the finding of the examiner, is given why Commissioner Coughlan did not have a right to receive his *111 actual expenses while looking after the Christy fund. The finding says this service and expense is covered by his salary and there is no statute authorizing the payment. It is very apparent that the salary of the county commissioner does not cover expenses incurred while looking after the Christy fund.
It is expressly stated in Section 897, Revised Statutes, that the compensation therein provided for is in full payment of all services rendered as such commissioner.
The matter of the Christy fund and services and expenses of Ashtabrila county commissioners in relation thereto was not known or taken into consideration by the Legislature in providing compensation for county commissioners. What the Legislature intended to do and did do was to provide a salary as compensation to county commissioners for the performance of such duties as the Legislature-required of them, and for such duties as were performed by them as such county commissioners. By reference to authorities hereinbefore cited, it seems clear that in looking after the Christy fund the county commissioners did not act as such commissioners but as a board of trustees of which the county commissioners are ex-officio members. It was the evident desire of James Christy to provide for a board of trustees for this fund which should not lapse or fail, but which should always be -complete and filled by representative men. He therefore provided in effect that whoever might constitute the board of county commissioners should have charge of this fund to be used to promote education in the county. No part of this fund is derived from taxation. The people contribute nothing to it and have no interest in it so far as its creation is concerned. It is not a part of the general fund. The expenses of Commissioner Coughlan .were not paid out of any fund in which the tax-payers had any interest, but were paid out of the Christy fund. There • is no apparent reason why this fund should not pay the necessary and proper expenses of its maintenance and the effectuating of its purposes.
When James Christy, by the terms of his will, asked whoever might be county commissioners to take up the burden of looking after his estate, to see to it that his bounty was properly. distributed, and that this fund should perpetuate his mem *112 ory, lie impliedly promised to pay the proper expenses of this work to the persons who should perform the duties enjoined by him. It is the duty of this fund to bear the expenses of carrying into effect the objects for which it was created.
Clyde L. Taylor, Prosecuting Attorney, for the state.
A. M. Cox and H. J. Redmond, contra.
If this fund were not subject to the payment of its expenses we are confronted with a condition which would place it within the power of persons who desire to. create a fund for some charitable or public purpose, or to establish eleemosynary institutions, and perhaps incidentally to memorialize themselves, to place the burden of doing all the work incident thereto upon some official, and save such fund wholly free from all expense arising from its care.
In the case of Scott v. Trustees of Marion Township, 39 O. S., 153, the facts briefly stated were as follows: Philip Beilis devised a farm to the trustees of the township and their successors in office for the exclusive use and benefit of the poor in the township, authorizing the trustees to dispose of the farm as they might think best. The farm was sold and out of the proceeds the note of Scott was purchased, upon which the trustees brought suit. Scott attempted to defend upon the ground that the trustees had not complied with the law and that their conduct was unauthorized.
It was held by the Supreme Court that the devise was not to the township nor to the uses named in the statute, but that it created a charitable trust to be administered by the trustees, and that their conduct was not controlled by statutory regulations for guidance of trustees.
It is believed that Commissioner Coughlan was entitled to remuneration for expenses incurred by him in looking after the Christy fund, upon the allegations of the petition, and the demurrer is likewise sustained to the second cause of action.