# SUPERIOR COURT OF BALTIMORE CITY.

Filed July 28, 1919.

STATE OF MARYLAND
VS.
N. WINSLOW WILLIAMS.

*Philip B. Perlman*, Assistant Attorney General, for State of Maryland.
*Edgar Allan Poe* for defendant.

BOND, J.—

The Constitution specifies a salary of $2,000 for the Secretary of State, and the General Assembly in the Acts of 1906, Chapter 449, Sections 131 and 139A, provided that from each fee paid by owners and operators of motor vehicles, one dollar should be retained by the Secretary of State "for his services in issuing the license," etc.

The plaintiff contends that the allowance of these amounts is an unconstitutional increase of compensation to this officer, and on this point counsel have argued and submitted the broad question whether the General Assembly may add to the compensation of any one of the officers the amount of whose salary is specified in the Constitution without any reference to legislative increase or diminution.

Standing alone, a statement that the salary shall be $2,000 clearly amounts to a statement that it shall not be $3,000 or any indefinite amount beyond $2,000. That would be the ordinary meaning and effect of the words; and we must, I think, take that as their meaning here unless the evidence available shows a different conception of them on the part of the framers of the Constitution. It seems to me that the source of all the difficulty in holding to this construction is the provision that the salaries specified for the judges shall not be diminished during their continuance in office (Secs. 24 and 31 of Art. 4 of the Constitution).

There we have other specified salaries followed by limitations upon legislative power to modify, which limitations superficially at least, assume that power to exist in the absence of restriction. They are unquestionably, in form, restrictions upon existing power rather than original grants of power; and it is perfectly logical to infer from them that to the framers of the Constitution the fixing of the amount of a salary did not mean a prohibition of subsequent change by the Legislature. The constitutional prohibition in Section 35 of Article 3 on extra compensation to public officers and others and the increase or diminution of the salaries of public officers, and the denial in Section 17 of Article 3 of eligibility of Senators and Delegates to offices the salary or profits of which "shall have been increased" during their terms, seem to me to present comparatively little difficulty. Were it not for the doubt raised by the provision concerning salaries of judges, I should have no hesitation in construing these latter prohibitions to refer only to salaries which the Constitution left the Legislature to fix in the first instance.

Such limitations upon legislative modification of compensation were, of course, not novelties in the Maryland Constitutions of 1851, 1864 and 1867. In the Constitution of the United States it was provided that the President should receive a compensation "which shall neither be increased or diminished during the period for which he shall have been elected" (Art. 2, Sec. 1). The same constitution provided that the compensation of judges "shall not be diminished during their continuance in office" (Art. 3, Sec. 1). It was there provided, too (Art. 1, Sec. 6), that no senator or representative should during his term be appointed to any civil office the emoluments of which had been increased during that term, and the framers of the Maryland Constitution of 1851 had all of these provisions before them in constitutions previously adopted in other States. In the debates reference was frequently made to provisions in these other constitutions. In twenty-one of the thirty-one States then in existence there were constitutional restrictions upon change of the compensation of Governors, in the words of the Federal provision concerning compensation of the President. Several other State constitu-

tions had provisions that the compensation of judges should not be diminished during their continuance in office; and the same provision had been adopted in Maryland by the constitutional amendment ratified in 1805. (See collection of "American Charters, Constitutions, etc.," edited by Thorpe.) Compensation for the judges had been added to in Maryland by several legislative enactments before 1851 (e. g., Act 1828, Chap. 127). There had also been several increases of the salaries of Federal judges by Acts of Congress (e. g., Act approved May 29, 1830). In all of these instances the legislative bodies had the fixing of the compensation in the first instance, and when they made modifications they modified only their own previous enactments. It was toward the middle of the century that the practice of specifying the amounts of salaries in constitutions began.

Sections 4 and 5 of Article 4 of the Maryland Constitution of 1851 specified the amounts of salaries of judges and added that these should not be *increased or diminished* during the continuance of the judges in office. The Committee on the Judiciary Department in the Convention of 1851 had recommended that the limiting provision should be only that the salaries should not be *diminished*. In either form this combination of specified amount with a limitation upon legislative action was novel.

The Constitution of 1864 provided fixed salaries for all judges, but only with reference to the judges of the Circuit Courts in the counties was there added a limitation on legislative action. There was a prohibition against the increase or diminution of the salaries of those judges during their continuance in office (Art. 4, Secs. 21, 28 and 32).

The Committee on the Judiciary Department in the Constitutional Convention of 1867 reported (page 333 of the Proceedings) a draft in which the salaries of all judges were fixed in amount with a provision that they should not be diminished during their continuance in office. During the convention amendments were offered, some to fix the amount of salary without any clause limiting change, some to fix the amount with a clause prohibiting increase or diminution during a term of office, and some to leave the fixing of amount to

the Legislature. (See, for instance, Mr. Archer's amendment, page 444 of Proceedings; Mr. Mitchell's amendment, page 503, and Mr. Hayden's amendment of August 8, 1867, to Section 31.) These amendments were ultimately rejected and the clauses left, as we now have them, in the words of the original committee report.

As has been pointed out, there was in the conventions discussion of the meaning and effect of the several clauses which we have to consider. In the Convention of 1851, in the report of the debate on the provision for the compensation of the Governor, which had been fixed at $3,600 without more, there is this remark noted (Vol. 1, p. 490):

"Mr. Grason said he had voted for the $4,000, and he had also voted for $3,600. The Legislature could not raise or diminish the salary after the provision shall have gone into operation."

In debate on compensation of the Attorney General, Mr. Crisfield, said (Vol. 1, p. 520), "that he desired that the Attorney General should be an officer who should receive a salary. If the Legislature should think, upon the performance of any unusual service, that he should receive additional compensation, they could give it to him."

There was no further discussion of the possible legislative change of compensation in the debates on salaries of the executive officers: Governor, Secretary of State, Attorney General, Comptroller and Treasurer.

In the debate on compensation of judges the discussion turned largely on the need of superseding the method of paying judges in part by fees and perquisites, a method followed under laws enacted since 1828. In Baltimore City especially these fees and perquisites had increased greatly in total amounts; and at the beginning of the convention the clerk of the Baltimore County Court was called upon to furnish a report of the resulting compensation to the judges. The report, printed in Volume 2, page 556, of the Report of the Debates, showed that the judges of that court were receiving up to $7,000 per year above the salary fixed by previous Act of Assembly. Mr. Crisfield, of Somerset county, led the debate on this subject. All speakers appear to have agreed with him in the main and the following quotation may be taken as a statement of their views and purposes:

Mr. Crisfield (Vol. 2, p. 556): "Now a system like this was the worst that could be conceived, because the judge's salary was dependent on the discharge of his judicial functions. The most mischievous system on the face of the earth for the payment of judicial labor was that by which the pay of the judge depended on granting the requests of suitors. This system had been growing up by piecemeal ever since 1828. And why had it been growing up? Because the judges had not been allowed, directly from the Treasury, a reasonable compensation for their services. Hence this reprehensible system of legislation. He did not intend to cast odium upon those judges. He had never heard their conduct complained of. But the system was wrong and ought to be discountenanced; and he now went for liberal salaries to prevent all temptation to seeking an increase of compensation by indirect means. He was opposed to all perquisites. He wanted the judges to receive a compensation which was fixed by law—a compensation sufficient for their services, and which should not be diminished while the judge was in office. And he would go further and say it should not be increased while he held his commission. The judge should stand perfectly independent, and he should know that when he went into office his salary was fixed, and not to be increased or diminished whilst he was there."

After the amount of the salary had been fixed, then, on motion of Mr. Brown, the section was amended by inserting the words "increased or" before the word "diminished". And on motion of Mr. Bowie there was added the words: "And no fees or perquisites of any kind shall be allowed by law to any of the judges." Later Mr. Spencer (Vol. 2, p. 558) moved to reconsider Mr. Brown's amendment so that the Legislature might in future increase the salaries. He argued that it would be unwise to leave it necessary to call another constitutional convention to increase them. The motion was lost by a vote of 63 to 5.

In the Convention of 1864 Mr. Miller (afterwards Judge Miller) offered an amendment to strike the words "in-

creased or" from the clause which provided: "Nor shall the salary or compensation of any public officer be increased or diminished during his term of office." That is part of Article 3, Section 35, of the Constitution of 1867.

Mr. Miller, in explanation, referred particularly to the depreciation in the value of currency, which in 1864, was pronounced, and the effect upon judges of an unvariable salary. The following portion of the debate upon the amendment has been referred to:

Mr. Miller, continuing his explanation, said (Vol. 2, p. 803): "I wish therefore to leave it in the power of the Legislature to make that salary correspond to what it really ought to be for our officers; not to give the Legislature the power to diminish, but to give them power to increase it from time to time to meet the exigencies which may arise."

Mr. Sands preferred that the Legislature should have the power to change salaries every year or two.

Mr. Miller said he preferred that his motion should go over to await the fixing of salaries, as until that information was at hand the convention could not vote intelligently.

"I should prefer, however, that the amendment I have offered should go over until it is ascertained what the salaries of our officers are to be; what is to be the basis upon which they are to be fixed by the various committees who have charge of them."

Mr. Stirling—"I cannot see what good will be accomplished by postponing this subject. No matter what may be the salaries fixed by the committees; if they are put into the Constitution the Legislature cannot change them."

Mr. Miller—"If we give the Legislature the power, they can change them."

Mr. Stirling—"Of course, if we give them the power they can. We might do as the old Constitution did, fix no salaries, leaving the Legislature to fix them all. This section only applies to those salaries which the Legislature has the power to regulate. Other salaries, those fixed by the Constitution, cannot be affected by the Legislature."

Mr. Miller—"Does not this clause apply to judicial officers as well as to others? Certainly it does. It prohibits the Legislature from making them any greater. I think the provision of the Constitution of the United States is a proper one. It gives to Congress the power to increase the salaries of officers whose minimum salary is fixed in the Constitution. If this amendment is adopted, I think the Legislature ought to have the power to increase."

Mr. Stirling—"But if the Constitution says that a judge shall receive $2,500.00 a year, for instance, then the salary will remain fixed; the Legislature cannot increase it."

Mr. Miller—"Then this provision is superfluous."

Mr. Schley (Vol. 2, page 804)—"It was believed by the committee that under a general law the salaries of classes of public officers can be increased or diminished; but not of any public officer during his term of office."

Mr. Miller—"The provision of the Constitution of the United States bears out the construction I should place upon this provision of our Constitution should any amendment be adopted. The clause of the Constitution of the United States, in reference to the salary to the President, provides that he shall receive a stated sum for his services, which shall not be increased or diminished during the term for which he shall be elected. That fixes his salary at so much. But when you come to the portion of the Constitution relating to the judiciary, you find the provision to be that the judges shall receive for their services a compensation which shall not be diminished during their continuance in office. But Congress has increased the salaries of the judges of the Supreme Court of the United States and of district judges under that clause, there being nothing in it prohibiting Congress from increasing their salaries or making such additional compensation as from time to time they may choose to give to those high officers. My amendment would allow the Legislature, from time to time, to meet the exigencies of the currency, to increase the salaries of those officers in order to keep them up to what ought to be the standard of such salaries."

Debate then proceeded on the method of accomplishing this result.

Mr. Stirling then offered an amendment to make the clause read:

"Nor shall the salary or compensation of any public officer be increased or diminished during his term of office, except in cases specially authorized by this Constitution."

And he added: "That will embrace every case. It looks like an invidious distinction in favor of judges, to mention them in this particular manner, and it will be an unpopular thing. It will be saying that the Legislature can give judges what they please, but nobody else. Make it a general provision, and not one especially in favor of judges."

Mr. Miller—"I will accept the suggestion of my friend from Baltimore City (Mr. Stirling) if this section does not bind us up when we come to the article on the judiciary. I will, therefore, modify my amendment so as to add to this section the following words:

" 'Except in cases specially provided for in this Constitution.' "

On vote then taken the amendment was lost, and the section was left in its present final form.

Mr. Cushing (Vol. 3, page 1619), said: "If gentlemen think that things are going to settle down to their old condition within the time of the judges under the present constitution, they are very much mistaken. You are making a provision in your constitution which will last only some twenty years at the furthest; probably the Legislature, with power to submit amendments to the people at any time, may change it sooner. And the salary of $3,500 a year would not last perhaps for five years."

Mr. Stirling (Vol. 3 1622): "This provision says the judge shall not have any more."

An examination of newspaper reports of debates in the Convention of 1867 has not brought to light any discussion of power in the legislature to change salaries.

This statement set forth, I think, the sum of the material upon which a construction has to be made.

The debates, I think, do not alone furnish us with the explanation and construction we need. The expressions of opinion by a few members in the course of discussion can hardly be taken as giving the final opinions even of those members; and certainly by no means reveal the opinions of the majority of the convention. And the expressions we have are conflicting on most points.

The actions taken by the conventions seem to me to give us some guidance, however.

In the Constitution of 1851 we find the original of the combination of salaries specified as to amount for the various executive officers, with the general clause in another place prohibiting increase or diminution of officers' compensation during their terms; and the salaries of judges also specified in amount, but with the same prohibition against increase or diminution attached. When, then, the members of the Constitution of 1851 drafted the clauses in which they fixed the salaries of the executive officers, they failed to add directly to them the restriction upon increase and diminution which in the Constitution of the United States and in the Constitutions of two-thirds of the States had long been familiar incidents of the provisions for compensation of those officers. We must take this action, I think, as a deliberate rejection of the restriction as to such salaries, unless we can assume that the general restriction adopted as to the salaries of "public officers" was intended to affect these salaries the amounts of which the Constitution had fixed as stated. But it seems hardly likely, if this were intended, that the same restriction would be specially repeated as to one group of officers, the judges, with fixed salaries. There would have been no reason for doing so. And I think we must infer from this that the general restriction was not intended so to apply. If this is correct—if the general restriction did not affect the fixed salaries of all other officers—then it follows either that the legislature was left with unlimited power over the amount of compensation of those officers or that it was left with none at all. Unlimited power in the legislature over officers' salaries was contrary to the disposition of the time; and seems inconsistent with the effort of the Convention in fixing the amount in the Constitution itself. These considerations seem to compel the conclu-

sion that the salaries fixed in the Constitution of 1851 were intended to be fixed beyond power in the legislature to modify. It may be objected that this argument subjects the Constitution to too severe a test of logical consistency; and the reported discussions in the Convention lend strength to that objection. But if we are not permitted to refer the Constitution to such a test then we are left without a test to explain apparent inconsistences, and, as I see it, must fall back on the construction of the clause alone which fixes the salary at the sum named, and hold that it must be no more and no less but so. Similar reasoning seems to lead to the same conclusion with respect to the two later constitutions. The result seems, indeed, somewhat clearer here.

In the Constitution of 1864 the prohibition of increase or diminution was repeated specially only as to the compensation of judges in the counties (Art. 4, Secs. 21, 28 & 32). The salaries of the judges of the Court of Appeals and of the judges in the city were fixed in amount, without more. If it were intended that the general prohibition should apply to all fixed salaries it would hardly have been repeated specially as to those of the county judges. And the inference that it could not have been intended that the legislature should have unlimited power over fixed salaries is strengthened by the distinction between the county judges and all others. For it seems unreasonable to suppose that the legislature was left with carefully limited power over the amount of salaries of county judges and entirely unlimited power over the salaries fixed in others. The conclusion must be that as to these fixed salaries, and as to all others so fixed, the legislature was left with no power.

In the present Constitution, of 1867, the legislature, to repeat, prohibited only from diminishing these salaries of judges. And now we come back to that which, as has been said, seems to me to be the main cause of difficulty; the possibility of inferring from this limited restriction that the framers of the Constitution conceived of all their fixed salaries as subject to legislative modification except in so far as expressly restrained in the Constitution. The general prohibiting clause (Art. 3, Sec. 35) could not now apply to the provisions concerning salaries of judges, for it conflicts with them. Yet we are still not free to construe that clause of general prohibition as recognizing a legislative power to modify the fixed salaries of executive officers. Taken as it is from the earlier Constitutions it seems unreasonable to suppose that the same clause was continued without verbal change and given a new and enlarged significance. It almost certainly means the same as before, and if the earlier reasoning is correct it did not affect salaries fixed in the Constitution but left them beyond the power of the legislature.

My conclusion upon this argument is, therefore, that the prohibition against the diminution of the salaries of judges in the last Constitution does not support a construction that the legislature has power to modify fixed salaries generally, except in so far as it is restrained in the Constitution expressly. This is arguing from such indications as we have outside the clauses themselves which fix the salaries without more.

It seems to me merely to confirm the conclusion from the ordinary meaning of such clauses, as I have said. And so in my opinion, the legislature did not have power to add to the compensation fixed by the Constitution for the office of Secretary of State. If construed as attempting such an addition then Sections 131 and 139A of Chapter 449 of the Acts of 1906 are invalid.

But there is still another question to be answered in order to determine the validity of a statute which attempts to add to the compensation of such an officer. The fixing of a salary in the constitution does not prevent the allowance of additional compensation for services performed outside the duties of the office. If, for instance, a distinct new office is conferred upon the same officer, he may be given the compensation proper to each. And, by the same reasoning, when the Legislature imposes distinct duties without establishing a new office, additional compensation may be given for the additional services, notwithstanding a prohibition in any such clause as has been discussed against an increase in compensation for any one office. An illustration is in the case of United States vs. Brindle, 110 U. S. 688, in which the holder of the office of receiver of public

moneys at a Government land office was appointed to assist a special commissioner to dispose of lands of certain Indian tribes ceded to the Government in trust for that purpose. The Supreme Court approved payment of additional compensation upon this reasoning:

"When, therefore, Brindle was appointed special receiver and superintendent, to assist the special commissioner in disposing of the trust lands, he was employed to render a service in no way connected with the office he held. He was not appointed to any office known to the law. No new duty was imposed on him as receiver of the land office. So far as anything appears in the record, the appointment was not made because Brindle was receiver of the land office. The duties to be performed were of a different character and at a different place from those of the land office, and while the exact amount of compensation for this service was not fixed, it was clearly to be inferred that such compensation as the law implies where labor is performed by one at the request of another, that is to say, a reasonable compensation, would be paid."

In Love vs. Baehr, 47 Cal. 364, the Court approved an extra payment of $1,500 to the Attorney General of the State who had been designated to act with a board of examiners to approve or reject claims against the State, examine books of officers, count money and invest funds. This was held to be extra work which he was at liberty to decline consistently with the full performance of the duties of his office. Referring to the Superintendent of Schools and the State Geologist, the Court said: "Can it be claimed with any show of reason that the Legislature could compel either of them to become ex officio warden of the state prison or superintendent of the state lunatic asylum."

So a register of deeds has been held entitled to receive additional compensation for making reports of mortgages to assessing officers and registers in other counties. Roulo vs. Auditors, 74 Mich. 129.

Magistrates have been allowed additional compensation for attendance at committee meetings. Thomas vs. O'Brien, 129 S. W. 103.

The mayor of a city, who was a lawyer by profession, was held entitled to receive extra compensation for defending a suit brought against the city. Mayor vs. Muzzy, 33 Mich. 61.

A judge properly received additional compensation for the work of issuing liquor licenses. Miama vs. Collins, 47 Kans. 417.

On the other hand, neither a judge nor a clerk of court were allowed additional pay for added work in connection with the selection of juries. This work was considered appropriate to their offices. Moore vs. Nation, 80 Kans. 672; United States vs. King, 147 U. S. 676.

The Maryland Constitution, Article 2, Section 23, provides that:

"The Secretary of State shall carefully keep and preserve a record of all official acts and proceedings, which may at all times be inspected by a committee of either branch of the Legislature; and he shall perform such other duties as may be prescribed by law, or as may properly belong to his office, together with all clerical duty belonging to the Executive Department."

This gives a broad charter to the Legislature to impose new duties on this official. But it is not an unlimited charter. The measuring out of compensation at the fixed sum of $2,000.00 shows that a limited field of duties was in the minds of the framers of the Constitution. We may be sure we shall defeat the purpose of these framers in one way or the other if we add duties without any limit, and yet maintain the compensation throughout at this figure of $2,000.00. We may say, with some of the decisions cited, that the Legislature has not the power to compel the performance of entirely distinct duties; but that seems to me to be an unserviceable test of the power to give extra compensation, with which we are concerned. Resistance by an incumbent to the mere addition of duties to the office by the Legislature is so nearly unthinkable that a test which assumes it is likely to lead us astray. We need only ask whether the new duties are so distinct that the Legislature may reasonably treat them as outside those contemplated in the creation of the office and the fixing of compensation for it, and so give outside or additional compensation. As far as they can reasonably do so the courts must defer to the judgment of the Legislature on the character of the new

duties and their relevancy to the office as originally conceived. The Legislature is likely to be much better informed on these things. And following these principles my conclusion is that the Legislature might well have concluded that the work of registration and license of motor vehicles under the Act of 1906 was distinct from that of the original office. It is a work of a kind unthought of in 1867, when the Constitution was adopted; and it is a work of magnitude. We know now, from experience, that it might well have required in time a large organization and establishment under the supervision of the Secretary of State. I have no hesitation in accepting the view that this work is outside the ordinary functions of this officer, and that the extra compensation authorized by the Legislature is valid. I have refused the plaintiff's first prayer, accordingly.

I do not see sufficient legislative authority for the defendant's retention of the other amounts now claimed by the plaintiff. The Act of 1898, Chapter 270, Section 109A to 109E, and the Act of 1908, Chapter 240, Section 68, expressly provided that the fees paid by foreign corporations should be paid in by the Secretary of State to the Treasury. That requirement amounts to an express denial to his right to retain any part for his compensation. McMullen vs. Shepherd, 133 Md. 157. And I cannot find any suggestion in the legislative enactments that the amounts to be paid to the Secretary of State for publishing the manual and the election laws, and for printing sample ballots, should include extra compensation for the Secretary of State himself. There is no claim made by the Secretary on the basis of quantum meruit such as was approved in the case of United States vs. Brindle, 110 U. S. 688.

The plaintiff's second, third, fourth and fifth prayers are accordingly granted. The conclusions already set out explain the refusal of the defendant's first and third prayers, and the granting of the second. The proposition of law set out in the defendant's third prayer is one with which I might possibly agree, but it is not up for decision as to all the duties imposed upon the Secretary of State inasmuch as the Legislature did not, as I see it, attempt to give compensation for the performance of all.